UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNAA, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE, INC., et al.,<br><br>　　　　Defendants. | Case No.  15-cv-03221-RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

This case concerns the removal and relocation of a music video, "Cowgirl," on defendant YouTube's video-sharing website. Plaintiff alleges that defendants' removal and relocation of the video give rise to four causes of action: 1) contractual breach of the covenant of good faith and fair dealing, 2) intentional interference with prospective economic advantage, 3) negligent interference with prospective economic advantage, and 4) defamation and/or false representation of fact in violation of the Lanham Act. Defendants move to dismiss the complaint. Dkt. No. 15. A hearing was held on November 13, 2015. After considering the arguments of the parties, the court grants defendants' motion to dismiss, but permits plaintiff to amend.

## I. BACKGROUND

"Cowgirl" is a music video featuring a performance by the recording artist Darnaa. Compl. ¶ 28. Plaintiff Darnaa, LLC is an independent music label that promotes and produces Darnaa's

music. *Id.* ¶¶ 9, 11. After agreeing to YouTube's Terms of Service, plaintiff Darnaa, LLC uploaded the music video to YouTube. *Id*. 22, 28. In its complaint, plaintiff noted that the Terms of Service were "in effect at the time of the wrongful conduct alleged" and incorporated the contract by reference. Compl. ¶ 22.

Sometime after plaintiff posted the "Cowgirl" music video, YouTube removed the video from its original location, later reposting it at a new URL with its view count reset to zero. *Id.* ¶ 32. Plaintiff protested the removal, and YouTube explained that the music video was removed because of an alleged violation of section 4.H of YouTube's Terms of Service. *Id.* ¶¶ 30, 31. Section 4.H of YouTube's Terms of Service prohibits the use of automated tools for increasing the view count of videos posted on its site:

> You agree not to use or launch any automated system, including without limitation, 'robots,' 'spiders,' or 'offline readers,' that accesses the Service in a manner that sends more request messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser.

*Id.* ¶ 30 (citing Dkt. 1-1, § 4.H).

Plaintiff denies any effort to artificially inflate the view count for the "Cowgirl" music video and alleges that the removal and relocation of the video, as well as YouTube's posting of a notice that the video had been removed because it violated YouTube's Terms of Service, harmed plaintiff's business and reputation. *See id.* ¶¶ 31, 42, 49, 50, 54, 56. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiff fails to allege or cannot establish the elements of each of the claims. Defendants also argue that all of plaintiff's claims are time-barred under the Terms of Service, which state that any cause of action arising out of or related to the service must commence within one year.

**II. ANALYSIS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

2

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A. Unconscionability

Plaintiff's opposes defendants' motion to dismiss, arguing that several provisions of YouTube's Terms of Service are unenforceable because they are unconscionable. Specifically, plaintiff points to the terms that 1) grant defendants discretion over content and services, 2) limit defendants' liability, and 3) shorten the statutory limitations period for claims, as unconscionable. Opp'n at 7-9.

"A finding of unconscionability requires 'a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 340 (2011) (quoting *Armendariz v. Foundation Health Psychcare Servs.,* 24 Cal.4th 83, 114 (2000)). In plaintiff's view, YouTube's Terms of Service are procedurally and substantively unconscionable because they constitute a contract of adhesion that "essentially nobody reads." Opp'n at 6. Plaintiff further argues that the "exculpatory and protective terms" are substantively unconscionable because they are "shockingly favorable to defendants." *Id.*

The court is not persuaded by plaintiff's analysis.

#### 1. Procedural Unconscionability

There is no dispute that the Terms of Service are a contract of adhesion. Defendants admit that YouTube does not negotiate terms with individual uses, noting that it would not be reasonable

to do so with YouTube's "millions of individual users." Reply at 2. Under California law, the adhesive nature of a contract "is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015). However, it "does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided."

In this case, the court finds the level of procedural unconscionability to be slight, as plaintiff does not lack meaningful choice. In its complaint, plaintiff alleges that YouTube "has emerged as the dominant, outcome-determinative website" for displaying music videos. However, plaintiff also acknowledges that there are "various websites on which a recording artist can display his or her music videos." *See* Compl. ¶ 18. Although "YouTube is undoubtedly a popular video-sharing website," plaintiff did not lack any meaningful choice because it could have publicized the music video "by putting it on various other file-sharing websites or on an independent website." *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 62 (D.D.C. 2014); *see also Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices.").

Plaintiff relies heavily on *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir. 2003) to argue that YouTube's Terms of Service are procedurally unconscionable, but plaintiff does not allege the level of procedural oppression present in that case. In *Circuit City v. Mantor*, the defendant employer "even resorted to threatening his job outright should [plaintiff] exercise his putative 'right' to opt out" of the contract. *Id.* at 1106. YouTube has no such hold over plaintiff. As plaintiff admits, YouTube offers its hosting services at no charge (Compl. ¶ 20), and plaintiff was free to take its video content elsewhere. Plaintiff argues that it "agreed to the TOS without it or any of its agents reading it or knowing what its terms were" (Opp'n at 2), but plaintiff's failure to review the terms does not make the contract procedurally unconscionable. *See Intershop Commc'ns v. Superior Court*, 104 Cal. App. 4th 191, 202 (2002) (rejecting

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

4

unconscionability argument where plaintiff "may have chosen not to read" the contract). While plaintiff alleges that users typically do not read terms of service on the internet, plaintiff does not allege that it lacked the opportunity to review the terms. Compl. ¶ 23. Nor does plaintiff allege that particular terms were "hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Mantor*, 335 F.3d at 1106. The court finds that plaintiff Darnaa, LLC had some "meaningful choice" and a "legitimate opportunity" to "negotiate *or reject the terms*" of the Terms of Service. *Id.* at 1107 (emphasis added); *see also Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d at 62 (finding no procedural unconscionability in YouTube's Terms of Service because they were not "obscured or hidden" and plaintiffs "had a clear opportunity to understand the terms" and "did not lack meaningful choice). Therefore, the court finds that YouTube's Terms of Service involve only a marginal degree of procedural unconscionability.

### 2. Substantive Unconscionability.

Furthermore, the court finds that the Terms of Service are not so one-sided as to be substantive unconscionable. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience."). For the same reasons discussed with respect to procedurally unconscionability, the court is not convinced that YouTube's Terms of Service are substantively unconscionable merely because they constitute a contract of adhesion. Moreover, none of the three provisions challenged by plaintiff shocks the conscience.

Plaintiff argues that the discretion afforded to defendants by the contract is unconscionable because it allows them to "act in bad faith" with impunity and that the limitation of liability clause is "unreasonably favorable to the party that drafted the adhesion contract." The court does not find these unsupported assertions convincing. Because YouTube offers its hosting services at no charge, it is reasonable for YouTube to retain broad discretion over those services and to minimize its exposure to monetary damages. Plaintiff has not pointed to any shocking unfairness in these

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

5

provisions of the Terms of Service.

With respect to the shortened period to bring claims, plaintiff is correct that some California courts have found certain contractually shortened statutes of limitations to be unconscionable and unenforceable. *See, e.g.*, *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 117 (2004) (finding unconscionability where labor statutes provided "significantly longer periods" than the six months period of the contract). However, the court finds that shortening the period to one year in this case is not unreasonable. *See Zamora v. Lehman*, 214 Cal. App. 4th 193, 206 (2013), *review denied* (June 19, 2013) ("As for shortening the limitations period, the courts will enforce the parties' agreement provided it is reasonable.... For instance, the parties can shorten California's four-year statute of limitations for breach of a written contract (Code Civ. Proc., § 337, subd. 1) to three months ..., six months ..., or a year...."); *C & H Foods Co. v. Hartford Ins. Co.*, 163 Cal. App. 3d 1055, 1064 (1984) ("Such a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation."); *see also TIG Ins. Co. v. ACE Am. Ins. Co.*, 236 F. App'x 336, 338 (9th Cir. 2007) (California statute "sets forth a default limitations period that the parties can shorten by contract").

**B.  Section 14's Limitations Period**

Defendants argue that plaintiff's claims are time-barred by Section 14 of YouTube's Terms of Service, which states in all capital letters that "ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICE MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES." Dkt. No. 15 at 14-15 (citing Dkt. 1-1 § 14). In its complaint, plaintiff Darnaa, LLC alleges that it posted the video to YouTube in or around February 2014 and that the first removal occurred "[w]ithin a few days" of posting. Compl. ¶ 28, 30. Plaintiff alleges that it corresponded with defendant YouTube about the removal of "Cowgirl" on March 22, 2014, and that the relocation of the music video took place "within a few days" of its

email to YouTube. *Id.* ¶¶ 30-32. In its complaint, plaintiff does not specify when the second removal occurred, except to say it happened "shortly after" the launch of a publicity campaign based on the second URL assigned to the video. *Id.* ¶ 34. Similarly, the complaint does not specify a time of publication of the removal notice, alleging only that defendants published it "[a]fter each of the two removals of the display of the video." *Id.* ¶ 56. However, at the November 13, 2015 hearing on defendants' motion, plaintiff acknowledged that this action, which was filed on July 10, 2015, commenced more than one year after the last wrongful act alleged in the complaint.

In its opposition, plaintiff's only response to defendants' argument is that the shortened limitations period is unconscionable and that its claims would be timely under the California statutes of limitations. Opp'n at 2. As explained above, the court finds that the terms are not unconscionable and that Section 14 is enforceable.

At the hearing, plaintiff presented two new arguments. First, plaintiff argued that the language of section 14 is ambiguous because a layman would not understand "any cause of action . . . must commence" to refer to filing a lawsuit. However, similar language is used in California's statutes of limitations. *See* Cal. Civ. Proc. Code § 312 ("Civil actions, without exception, can only be ***commenced*** within the periods prescribed in this title, after the ***cause of action*** shall have accrued, unless where, in special cases, a different limitation is prescribed by statute.") (emphasis added). The statute also makes clear that "[a]n ***action is commenced***, within the meaning of this Title, when the complaint is filed." Cal. Civ. Proc. Code § 350 (emphasis added). The court finds no basis for concluding that the language of section 14 is unclear. *See B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2008 WL 2782709, at *2 (N.D. Cal. July 16, 2008) (distinguishing as "distinctively clear" contract language stating that "[i]n no event shall Buyer commence any action under this contract later than one year after the cause of action has accrued").

Second, plaintiff argued at the hearing that even if the section 14 were enforceable, the contractual limitations period does not bar this action because plaintiff filed a separate action in

state court within one year of accrual of its causes of action. Plaintiff's theory is that, having filed one lawsuit—even one subsequently dismissed—it has preserved its right to file another indefinitely, subject only to the California statutes of limitation. The court does not find this argument persuasive. *See Lynch v. Watson*, 78 Cal. App. 2d 96, 102 (1947) (affirming dismissal of claims where plaintiff's first suit had been dismissed for failure to prosecute and second suit was filed after statute of limitations had run).

Because the court finds that section 14 of the Terms of Service is enforceable, and because plaintiff's own account of events establishes that its claims accrued more than one year before the filing of the complaint in this case, plaintiff's claims are dismissed as time-barred. Leave to amend is granted to the extent that plaintiff is able to plead facts showing that it is entitled to equitable tolling of the contractual limitations period under California law. *See McRee v. Goldman*, No. 11-CV-00991-LHK, 2011 WL 4831199, at *7 (N.D. Cal. Oct. 12, 2011) (dismissing with leave to amend to plead equitable tolling). Because leave to amend is granted, the court will consider whether plaintiff has stated claims upon which relief can be granted.

### C. Section 10's Limitation on Liability

Defendants argue that plaintiff's breach of contract and tortious interference claims are barred by Section 10 of the Terms of Service, which states:

> In no event shall YouTube … be liable to you for any direct, indirect, incidental, special, punitive, or consequential damages whatsoever resulting from … (iv) any interruption or cessation of transmission to or from our services … [or] (v) any errors or omissions in any content … whether based on warranty, contract, tort, or any other legal theory[.]

Mot. at 8-9. Plaintiff does not argue that the clause does not encompass its claims, but counters that the clause itself violates public policy and is therefore unenforceable. Opp'n at 14 (citing Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.")). Plaintiff argues that all of its claims—with the exception of its third cause of action for negligent interference with prospective economic advantage—are "intentional torts," and that section 10 of

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

8

the Terms of Service "may not be applied to exculpate defendants from liability on those claims."[1] Opp'n at 14. The court finds that the limitation of liability clause is enforceable and bars recovery on plaintiff's third cause of action. However, the court also finds that California Civil Code section 1668 may preclude application of section 10 to plaintiff's first and second causes of action for breach of the implied covenant of good faith and fair dealing and intentional tortious interference because they allege intentional wrongs.

Clauses like section 10 of YouTube's Terms of Service "have long been recognized valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012). They are particularly appropriate where, as here, one party is offering a service for free. *See Markborough Cal. Inc. v. Super. Ct.* 227 Cal. App. 3d 705, 714 (1991) ("limitation of liability provisions are particularly important where the beneficiary of the clause is involved in a 'high-risk, low-compensation service'"). Section 1668 of the California Civil Code does not prohibit the application of such clauses to negligence claims. *See Farnham v. Superior Court (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69, 71, 70 Cal. Rptr. 2d 85, 86 (1997) (contractual releases of future liability for ordinary negligence . . . are generally enforceable). In its opposition, plaintiff appears to concede that section 10 would prohibit recovery on its negligence claims. Applying section 10 of YouTube's Terms of Service, the court dismisses plaintiff's third cause of action without leave to amend.

However, in California, "contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated." *Farnham v. Superior Court (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69, 71, (1997); *see also McQuirk v. Donnelley*, 189 F.3d 793, 796-97 (9th Cir. 1999) (*Farnham* "stands for the proposition that § 1668 invalidates the total release of future liability for intentional wrongs"). Because section 10 of YouTube's Terms of Service purport to limit recovery of "any" damages "whatsoever" (Dkt. No. 1-1 at 3), they constitute a total release

---

[1] Although plaintiff's opposition describes all claims other than the negligence claim as "intentional torts," the court notes that the first cause of action in the complaint is for "breach of contract per breach of covenant of good faith and fair dealing." Compl. at 12.

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

9

of future liability, and cannot apply to claims based on intentional wrongs. *See Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (finding that section 1668 may preclude enforcement of a limitations of liability "*even if* the plaintiff asserts only a breach of contract claim"). Therefore, the court declines to apply section 10 of YouTube's Terms of Service to bar recovery on plaintiff's first and second causes of action.

### D. Sufficiency of Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiff's claim for breach of implied covenant of good faith and fair dealing fails because the Terms of Service authorize YouTube to relocate or remove videos in its sole discretion, relying on section 4.J, 6.F, and 7.B of the Terms of Service. Mot. at 5 (citing *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374 (1992)). The Terms of Service reserve to YouTube the right to determine whether "Content violates these Terms of Service" and, "at any time, without prior notice and in its sole discretion, remove such Content . . ." and allow YouTube to "discontinue any aspect of the Service at any time." Dkt. No. 1-1 §§ 7.B, 4.J. Plaintiff claims that section 7.B and 6.F apply only to Content, not to Services such as video hosting, and that section 4.J reserves only the right to terminate any aspect of the Service as to all users as a whole, not to the right to terminate Service for a particular user.

The court finds that it is ambiguous whether section 7.B permits YouTube to remove videos and their view counts if YouTube determines the poster violated the "automated systems" provision of the Terms of Service. Section 7.B. applies to "***Content*** that violates the Terms of Service." (emphasis added). "Content" is defined by the terms as "test, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other material you may view on, access through, or contribute to the Service." *Id.* ¶¶ 2.A. It does not appear that view counts fall within that definition. Even if view counts are considered "Content," it is not clear that section 7.B expressly authorizes the removal of the associated video "Content," as opposed to just the offending view count. It is similarly ambiguous whether the last sentence of

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

10

1  section 6.F permits YouTube to remove any "Content" without prior notice, or whether it refers
2  only to the Content that "infringes on another's intellectual property rights" that is discussed in the
3  rest of section 6.
4       The court also finds the language of section 4.J unclear as to whether YouTube is
5  permitted to remove and relocate a user's video under any circumstances. The Terms of Service
6  "apply to all users of the Service," and the "Service" includes "all aspects of YouTube, including
7  but not limited to all products, software and services offered via the YouTube website, such as the
8  YouTube channels, the YouTube 'Embeddable Player,' the YouTube 'Uploader' and other
9  applications" (Dkt. 1-1 ¶ 2.A). However, in the context of the rest of section 4, it is not clear that
10 YouTube reserved the right to discontinue any aspect of its service provided to a particular user,
11 without restriction. Section 4 opens by stating that "YouTube grants you permission to access and
12 use the Service as set forth in these Terms of Service, provided that," and goes on to list several
13 conditions to which the user must agree. Dkt. 1-1 ¶ 4. Section 4.J is the only subsection of section
14 4 that does not refer to the user or an obligation of the user in anyway. It is not clear that YouTube
15 reserved the right to suspend any aspect of its service to a particular user for any reason
16 whatsoever thus eliminating from the Terms of Service any implied promise of the good faith and
17 fair dealing normally contained in every contract. Section 4.J can reasonably be read as only
18 reserving YouTube's right to cease to offer a service to users as a whole. This reading of 4J would
19 maintain the implied promise that YouTube would not do anything to unfairly interfere with the
20 right of any other party to receive the benefits of the Terms of Service.
21      Because the court finds that the Terms of Service are ambiguous, the contract must be
22 interpreted against the defendants. Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by
23 the preceding rules, the language of a contract should be interpreted most strongly against the
24 party who caused the uncertainty to exist."); *Goddard v. S. Bay Union High Sch. Dist.*, 79 Cal.
25 App. 3d 98, 110 (1978) (applying rule that ambiguity must be resolved against drafter of contract
26 of adhesion). Therefore, the court cannot say that the terms expressly permit removal and

1  relocation of plaintiff's music video, and the implied covenant of good faith and fair dealing

2  applies. The court notes the decision in *Song fi Inc. v. Google, Inc.*, No. 14-5080 SC, 2015 WL

3  3624335, at *6 (N.D. Cal. June 10, 2015), in which the court dismissed breach of implied

4  covenant of good faith and fair dealing under very similar circumstances, finding that YouTube's

5  Terms of Service expressly permit removal and relocation. The court agrees with the *Song fi* court

6  that "YouTube's terms of service are inartfully drafted," but the court cannot agree that the terms

7  are unambiguous. 2015 WL 3624335 at *6. The court finds the allegations in the complaint are

8  sufficient to support a claim for contractual breach of the covenant of good faith and fair dealing.

### E.  Intentional Interference with Prospective Economic Advantage Allegations

Defendants argue that plaintiff's tortious interference claims fail for several reasons. Because the court dismisses plaintiff's claim for negligent interference with prejudice, the court now addresses only the intentional interference claim. Plaintiff alleges that defendants interfered with plaintiff's "future beneficial economic relationship" with 1) Darnaa's fans and 2) Clear Channel Communications. Compl. ¶¶ 43-54.

Defendants first object to the claim with respect to plaintiff's relationship with **Darnaa's fans**, arguing that as a matter of a law, "tortious interference does not apply to alleged interference with a large, anonymous group such as 'the public' or a business's 'customers' or a musician's fanbase." Mot. at 7-8 (citing *e.g.*, *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 528 (1996) (rejecting claim based on "interference with the market") and *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1034 (N.D. Cal. 2009) (rejecting claim based on interference with "potential customers")). Plaintiff does not address this point in its opposition, mentioning only its relationship with Clear Channel. Opp'n at 13. Because this claim amounts to a claim of interference with the market, plaintiff's claim based on its relationship to Daarna's fans is dismissed with prejudice.

Defendants also argue that plaintiff cannot sustain a tortious interference claim with respect to plaintiff's relationship with Clear Channel because 1) plaintiff failed to allege

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC

1  independently wrongful conduct and 2) plaintiff failed to allege facts that suggest that YouTube
2  knew about the relationship with Clear Channel. Mot. at 6-7, 8.
3    The court is unpersuaded by defendants argument that plaintiff failed to sufficiently plead
4  knowledge of the relationship. The complaint alleges that the removal and relocation of the music
5  video was done with knowledge of the relationship. Compl. ¶ 48. It also includes allegations that
6  "Clear Channel constitutes a major advertising industry competitor of Google" and that "[t]hrough
7  the use of sophisticated tracking software," defendants were "able to ascertain that the large
8  majority of the viewers accessing the 'Cowgirl' video on YouTube came to the video by clicking
9  links embedded in various of the hundreds of Clear Channel Internet radio websites." *Id.* at 45, 46.
10 Furthermore, Clear Channel is referenced in plaintiff's email to YouTube protesting the removal
11 of the video. *See* Dkt. No. 1-1 at 5. Viewing the allegations of the complaint in the light most
12 favorable to plaintiff, the court is satisfied that plaintiff sufficiently pleaded defendants'
13 knowledge of plaintiff's relationship with Clear Channel.
14   Because the court finds that the allegations in the complaint are sufficient to support a
15 claim for contractual breach of the covenant of good faith and fair dealing, if plaintiff is able to
16 amend its complaint to avoid the consequences of failing to file timely, then the requirement of
17 "wrongful" conduct apart from the alleged interference itself will be met. *See Givemepower Corp.*
18 *v. Pace Compumetrics, Inc.*, No. 07CV157 WQH RBB, 2007 WL 2345027, at *8 (S.D. Cal. Aug.
19 14, 2007) (holding pleading requirement of independently wrongful conduct satisfied where
20 plaintiff adequately alleged, among other claims, breach of the implied covenant of good faith and
21 fair dealing).

  **F. Defamation and Lanham Act Allegations**

23   Plaintiff alleges that the statement posted by defendants after removing "Cowgirl" was
24 defamatory and a false representation of fact in violation of the Lanham Act. Compl. ¶¶ 54-58.
25 Although the complaint does not quote the notice verbatim, plaintiff alleges that after removing
26 the video, YouTube posted at the same URL a "pejorative message" that "the video had been

1 removed for violation of the YouTube Terms of Service." Compl. ¶ 56.

### 1. Lanham Act

In order to maintain a claim for false advertising under the Lanham Act, plaintiff must allege the following elements:

> 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003). Defendants challenge only one aspect of these elements, arguing that plaintiff failed to allege that the removal notice was made "in commercial advertising or promotion." Dkt. No. 15 at 9.

In order for the notice to constitute "commercial advertising or promotion" under the Lanham Act it must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). Defendants focus on the first and third requirements, arguing that the notice was not "'commercial speech' made 'for the purpose of influencing consumers to buy defendant's goods or services.'" Dkt. No. 15 at 9. (citing *Coastal Abstract Ser. v. First Am. Title Ins. Co.*, 173 F.3d at 735).

Plaintiff does not address whether the notice is "commercial speech" that "does no more than propose a commercial transaction," (*Rice*, 330 F.3d at 1181), but plaintiff does argue in its opposition that the notice "was inserted, at least in part, if not in whole, to influence viewers to buy or use defendants goods or services" because it shows that "defendants are on the job policing the Website and enforcing their policies for the protection of the Website and its users." Opp'n at

14-15. The complaint itself, however, does not allege that the notice was made as part of any marketing effort. *See Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 1086027, at *12 (N.D. Cal. Mar. 24, 2011) (dismissing claims because although plaintiff alleged that defendant's letters were intended to deter plaintiff's customers from doing business with plaintiff, it had not alleged that defendant had tried to persuade the customers to do business with the defendant). The court reads the complaint to allege that the notice was made as part of the service offered by YouTube, perhaps for the purpose of informing the "expectant viewer" about its removal of the content, or perhaps for the purpose of "disparag[ing] the integrity" of plaintiff. *See, e.g.*, Compl. ¶¶ 49, 56. The court does not read the complaint to allege a promotional purpose, but the court cannot say that amendment to include additional allegations would be futile. Accordingly, the court grants the motion to dismiss the Lanham Act claim with leave to amend.

### 2. Defamation Allegations

Defendants also challenge the sufficiency of plaintiff's defamation claim, arguing that 1) the notice had no defamatory meaning, 2) the notice did not refer to the plaintiff, 3) the plaintiff did not allege intent to defame, and 4) plaintiff did not plead special damages. The defamation claim is dismissed with leave to amend. Plaintiff has not sufficiently pleaded that the notice is "of or concerning" defendants, that the notice has defamatory meaning, or that plaintiff has suffered special damages.

#### a. Intent

The court is not persuaded by defendants' argument that plaintiff did not sufficiently plead intent. Defendants argue that plaintiff must show "actual malice" because it "seems likely that Daarna is a public figure." Mot. at 12-13. The plaintiff in this action is Daarna, LLC—not Daarna, the recording artist, and there is no allegation that the production company is public figure. Therefore, actual malice is irrelevant, and, as defendants acknowledge, plaintiff need show only negligence with respect to the truth or falsity of the statement. Mot. at 13 (citing *Mt. Hood Polaris, Inc. v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009) and *Carney v. Santa Cruz Women Against*

1  *Rape*, 221 Cal. App. 3d 1009, 1013 (1990)). Plaintiff has alleged that it informed defendants that
2  plaintiff had not violated the Terms of Service by using an automated system to inflate view count.
3  Compl. ¶ 31. However, the defamation claim fails for other reasons.

### b. Of and Concerning the Plaintiff

Defendants argue that the notice is "without any indication of who posted the video or who appeared in it" and is therefore "not 'of and concerning' either Darnaa *or* Darnaa, LLC." Reply at 10. Plaintiff is correct that the complaint must include allegations indicating that the notice is "of and concerning" the plaintiff. *See Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1405 (1999) (affirming dismissal where sentence did not refer to plaintiff by name or implication*)*; *Golden N. Airways v. Tanana Publ'g Co.*, 218 F.2d 612, 622 (9th Cir. 1954) ("if the person is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts mast be alleged and proved showing that a third person other than the person libeled understood it to refer to him"). In the complaint, the defendants' notice is described as referring to the video, as opposed to identifying the poster of the video. *See* Compl. ¶¶ 49, 56. One court has already held that an identical statement "does not mention or reference" the plaintiff and "does not describe any individual whatsoever." *See* Dkt. 15-3, Order on Demurrer to Original Complaint, *Bartholomew v. YouTube, LLC*, No. 1-15-cv-275833 at *6. Plaintiff argues that viewers would understand the statement concerned the producer of the video, but offers that it would be able to amend the complaint to include specific allegations to that effect. Opp'n at 15-16. Because the complaint does not include any allegations as to how the notice identifies plaintiff, the court concludes the current complaint does not allege that the statement was made "of or concerning the plaintiff." Leave to amend to include such allegations is granted.

### c. Defamatory Meaning

Defendants also argue that the notice has no defamatory meaning. Plaintiff argues that "a statement that a party, especially a business person or a business itself, violated the terms of a contract" has defamatory meaning in itself, citing the "whole fabric of the Fair Credit Reporting

United States District Court
Northern District of California

Act." Opp'n at 15. "If a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts, there is libel per se." *Palm Springs Tennis Club v. Rangel,* 73 Cal.App.4th 1, 5 (1999). If "the defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts . . . not discernable from the face of the publication," then the libel is per quod. *Id.* at 6*; see also* Cal. Civ. Code § 45a (distinguishing between "libel on its face" and "[d]efamatory language not libelous on its face").

Defendants assert that two courts have ruled that identical messages do not constitute defamation per se. *See* Dkt. 15-3, Order on Demurrer to Original Complaint, *Bartholomew v. YouTube, LLC*, No. 1-15-cv-275833 at *6-7 ("no reasonable reader would perceive a meaning in the Statement that would expose Plaintiff to hatred, contempt, ridicule, or obloquy, cause her to be shunned or avoided, or have a tendency to injure her in her occupation"); *Song fi Inc. v. Google, Inc.*, No. 14-5080 SC, 2015 WL 3624335, at *7 (N.D. Cal. June 10, 2015) (holding that notice stating "[t]his video has been removed because its content violated YouTube's Terms of Service" not libel per se). Other California courts have found that a statement alleging breach of contract or policy is not defamatory per se. *See Emde v. San Joaquin Cty. Cent. Labor Council*, 23 Cal. 2d 146, 159 (1943) ("The only remaining statement subject to challenge is that the dairy violated its contract with the union. Again, the question of violation of contract is a legal conclusion, but, ***by innuendo***, the respondents have pleaded that the publication was intended to convey the charge that the respondents were dishonest.") (emphasis added); *Vedovi v. Watson & Taylor*, 104 Cal. App. 80, 84-85 (1930) (finding nothing in a notice that an insurance policy was canceled for non-payment of premiums that would expose plaintiff "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation," especially in the absence of a reference to plaintiff himself); *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 309, 44 Cal. Rptr. 404, 409 (Ct. App. 1965) (finding no defamation per se in absence of "implication that plaintiffs failed to pay their obligations from dishonest motives or

from a desire to defraud"); *see also Jamarillo v. Food 4 Less Madera*, No. CV-F-10-1283 LJO GSA, 2010 WL 3717307, at *8 (E.D. Cal. Sept. 15, 2010) (finding that statement that plaintiff was unreliable employee who did not adhere to policies could only support a claim for defamation per quod and dismissing for failure to plead special damages) (citing *The Nethercutt Collection v. Regalia,* 172 Cal.App.4th 361 (2009)). This court concludes that, in the absence of any detail about the type of violation that allegedly underlying the removal, a notice that a "video has been removed for violation of the YouTube Terms of Service" cannot constitute defamation per se. Compl. ¶ 56.

"Where the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or 'innuendo,' which makes them defamatory." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645-47, 85 Cal. Rptr. 2d 397 (1999), *as modified* (June 23, 1999). Because plaintiff has not included such details, its defamation cause of action fails. Leave to amend to plead extrinsic circumstances that would make the notice defamatory is granted.

### d. Special Damages

To the extent plaintiff is able to amend the complaint to allege defamation per quod, plaintiff must also allege special damages. *See* Cal. Civ.Code § 45a ( "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damages as a proximate result thereof."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998). "Special damages" are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 45a(4)(b). In the complaint, plaintiff's damages for defamation are tied to its allegations regarding the removal and relocation of the video—they are not specific to the defamation claim. *See* Compl. ¶ 57 ("Publication of the aforesaid message

United States District Court
Northern District of California

proximately caused the special and general compensatory damages mentioned above."). Accordingly, the court finds that plaintiff has failed to plead special damages, but grants leave to amend.

## III. CONCLUSION

Plaintiff's claims are dismissed as follows:

1. First cause of action for contractual breach of the implied covenant of good faith dismissed with 20 days leave to amend.

2. Second cause of action for intentional interference with prospective economic advantage dismissed with 20 days leave to amend.

3. Third cause of action for negligent interference with prospective economic advantage is dismissed with prejudice.

4. Fourth cause of action for defamation and/or violation of the Lanham Act dismissed with 20 days leave to amend.

**IT IS SO ORDERED.**

Dated: December 2, 2015

Ronald M. Whyte
United States District Judge

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FC