UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARNAA, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE, INC., et al.,<br><br>  Defendants. | Case No. 15-cv-03221-RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION**<br><br>Re: Dkt. Nos. 34, 37 |

This case concerns the removal and relocation of a music video, "Cowgirl," on defendant YouTube's video-sharing website. Currently before the court are defendants' Motion to Dismiss the First Amended Complaint and defendants' Motion for Partial Reconsideration of the court's order dismissing the original complaint.

**I.    BACKGROUND**

Defendant YouTube, LLC, which is owned by defendant Google, Inc., operates a popular video-sharing website located at www.youtube.com, where users can share and watch videos. Dkt. No. 29, FAC ¶¶ 8, 13, 14. Users are required to agree to YouTube's Terms of Service before posting videos to the website. *Id.* ¶ 22. The Terms of Service prohibit the use of automated systems to access the service:

1

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

> You agree not to use or launch any automated system, including without limitation, "robots," "spiders," or "offline readers," that access the Service in a manner that sends more request messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser.

*Id.* ¶ 30 (citing Dkt. No. 29, Ex. 1 at § 4(H)). The Terms of Service also require that any cause of action arising out of or related to YouTube's services "COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES." Dkt. No. 29, Ex. 1 at § 14.

Plaintiff Darnaa, LLC is an independent music label that produces and promotes the music of the recording artist Darnaa. FAC ¶¶ 9, 10. Plaintiff alleges that the recording artist Darnaa was accepted into a Clear Channel Communications promotional program known as "massive artist integration program" linked to Clear Channel's radio marketing program. *Id.* ¶ 28. The program was intended to promote traffic to Darnaa's "Cowgirl" music video URL on the website YouTube. *Id.* Plaintiff asserts that Clear Channel is "a major advertising industry competitor of Google." *Id.* ¶ 49.

On or about March 2, 2014, plaintiff posted the music video entitled "Cowgirl" featuring the recording artist Darnaa on YouTube. *Id.* ¶ 28. Plaintiff alleges that around March 21, 2014, plaintiff learned that defendants had removed the "Cowgirl" music video from the YouTube website. *Id.* ¶ 30. In response to an inquiry from plaintiff, YouTube explained that it had removed the music video because plaintiff had violated Section 4(H) of YouTube's Terms of Service by using an automated system to manipulate the video's view count. *Id.* ¶¶ 30, 31. Plaintiff denied any effort to artificially inflate the view count for the "Cowgirl" music video and protested the removal and relocation of the video. *See id.* ¶¶ 31, 42. On April 7, 2014, plaintiff filed a lawsuit against defendant Google in Los Angeles Superior Court, seeking damages and an injunction to restore the music video to the website with its original URL. *Id.* ¶ 32.

On or about April 28, 2014, plaintiff learned that "Cowgirl" music video was again available on YouTube, but at a different URL and with its view count therefore reset to zero. *Id.* ¶ 33. Plaintiff alleges that Clear Channel launched a second promotional campaign for the music

2

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

1   video, but that YouTube removed the video a second time on or about April 30, 2014. *Id.* ¶

2   34.YouTube reposted the music video again at a third URL, but plaintiff and Clear Channel made

3   no further promotional efforts. *Id.* ¶ 35.

4         On May 27, 2014, Google filed a motion to transfer venue of the state court action. *Id.* ¶

5   36. On August 28, 2014, the state court granted the motion and dismissed the case without

6   prejudice. *Id.* ¶ 36. Google filed and served a Notice of Order regarding the dismissal on

7   September 4, 2014. *Id.* The instant case was filed on July 10, 2015. Dkt. No. 1. On December 2,

8   2015, this court granted defendants' motion to dismiss, finding that plaintiff's claims were time-

9   barred by the one-year limitations of actions provision in YouTube's Terms of Service. Dkt. No.

10  27. Leave to amend was granted. *Id.* at 7.

11        Plaintiff filed an amended complaint on December 14, 2015. Dkt. No. 29. In the First

12  Amended Complaint, plaintiff claims that defendants (1) breached the implied covenant of good

13  faith and fair dealing when they removed and relocated the "Cowgirl" music video and (2)

14  intentionally interfered with plaintiff's "beneficial economic relationship" with Clear Channel by

15  "essentially making worthless the money and time spent on formulating and executing" the

16  promotional campaign for the music video. *Id.* ¶¶ 38-46, 47-55.

## II.  ANALYSIS

### A.  Motion to Dismiss

Defendants move to dismiss the First Amended Complaint on the grounds that it is barred by the limitation provision in YouTube's Terms of Service and the Communications Decency Act.

#### 1.  Limitation of Actions Provision

Defendants assert that plaintiff's claims are barred by the limitation of actions provision contained in the Terms of Service. Plaintiff claims the limitation period was tolled while plaintiff's action was pending against defendants in state court. The parties agree that the California law governs the application of equitable tolling in this case. Dkt. Nos. 38 at 3, 42 at 5. California's equitable tolling of the statute of limitations "is a judicially created, nonstatutory doctrine" that is

3

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

"designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99-100 (2008) (citations omitted).

"Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" *Id.* (quoting *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003)). "[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." *Lantzy*, 31 Cal. at 370-71 (emphasis in original). In this case, plaintiff argues that contractual limitations period should be tolled for the period during which plaintiff's state court action was pending. FAC ¶ 37. Such tolling would tack on enough time to the end of the limitations period to make the filing of this action timely.[1] *Id.*

Equitable tolling for the time a plaintiff pursued relief in an alternative forum requires a showing of three elements: (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff. *McDonald*, 45 Cal. 4th at 102. "The burden is on the plaintiff to show that equitable tolling is appropriate." *United States v. Marolf*, 173 F.3d 1213, 1220 (9th Cir. 1999) (citing *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th

---

[1] The details of how equitable tolling would apply to the relevant dates in this case are not perfectly clear to the court. Plaintiff calculates the "time span from the filing of the state court action to the Notice of Order" as "five months, 14 days," and would toll the contractual limitations period for that amount of time. *See* FAC ¶ 37. Yet the court calculates the time between the April 7, 2014 filing of the state court action and the September 4, 2014 Notice of Order as four months, 28 days (150 days). Moreover, while plaintiff treats March 21, 2014—the date on which "the display of the subject video was removed for the first time"—as the accrual date, *see* FAC ¶ 37, defendants do not seem to accept that date, noting that "the FAC does not specify exactly when these relocations occurred," *see* Dkt. No. 34 at 3. Defendants imply that accrual might have been triggered as early as February 2014. *Id.* at 8 ("the contractual limitations period" expired "no earlier than February 2015"). In any event, the parties do not dispute that equitably tolling the limitations period during the pendency of plaintiff's state court action would make plaintiff's claims in this case timely.

4

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

Cir.1980)); *see also In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 913, as modified (Apr. 23, 2010) ("petitioner bears the burden of proving the applicability of equitable tolling"); *Judelson v. American Metal Bearing Co.*, 89 Cal. App. 2d 256, 266 (1948) (when a plaintiff's claim depends upon equitable estoppel, "it must be pleaded in the complaint with sufficient accuracy to disclose the facts relied upon and the plaintiff must prove all of the elements constituting it"), quoted in *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137 (N.D. Cal. 2009). ("Where, however—as here—a plaintiff contends that the statute of limitations is not a bar based on equitable tolling, the plaintiff bears the burden of proving the applicability of such.").

While the issue of equitable tolling is fact-intensive and often addressed at a later stage in litigation, a district court may grant a motion to dismiss if it is clear as a matter of law that plaintiff could not prevail on the issue. *See, e.g.*, *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (affirming dismissal of claims where "all facts necessary to decide whether equitable tolling applies are in the record"); *Ervin v. Los Angeles Cty.*, 848 F.2d 1018, 1020 (9th Cir. 1988) (affirming dismissal where record reflected lack of reasonable and good faith conduct).

### a. Timely Notice to Defendant

There is no dispute between the parties about timely notice. "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore, the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." *McDonald*, 45 Cal. 4th at 102 n.2 (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)). There is no dispute that plaintiff's state court action against Google was filed within one year as required by Section 14 of YouTube's Terms of Service. Similarly, there is no dispute that defendant Google, as YouTube's parent company, was alerted to the need for defendants to begin investigating the factual basis of plaintiff's claims.

### b. Lack of Prejudice to Defendant

5

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

There is also no dispute about lack of prejudice to defendants. "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *McDonald*, 45 Cal. 4th at 102 n.2 (quoting *Collier*, 142 Cal. App. 3d at 925). Plaintiff's state court action alleged both intentional and negligent interference with prospective economic relations. *See* Dkt. No. 34-1, Ex. A. Plaintiff's claims here are similar, but not identical. While the original state court complaint referenced YouTube's Terms of Service, it did not contain allegations of contractual breach of the covenant of good faith and fair dealing. *See id.* Furthermore, the complaint in this case includes allegations based on events after the state court complaint was filed—specifically the second and third removals and relocations of the music video. However, defendants do not claim that they suffered any prejudice.

### c. Reasonable and Good Faith Conduct on Part of Plaintiff

Defendants argues that plaintiff cannot allege reasonable and good faith conduct sufficient to support the application of equitable tolling because plaintiff (1) voluntarily dismissed the original state court action and (2) waited over ten months after the state court dismissal to file this suit. Plaintiff responds that (1) it did not voluntarily dismiss the state court action and (2) the lapse of ten months alone does not establish unreasonable or bad faith conduct. "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison v. State of California* . . . the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." *McDonald*, 45 Cal. 4th at 102 n.2 (quoting *Collier*, 142 Cal. App. 3d at 926); *see Addison v. State of California*, 21 Cal. 3d 313, 321 (1978)).

#### i. Voluntary Dismissal

The parties agree that defendant Google moved to transfer the state action from Los Angeles County to Santa Clara County based on a forum and venue selection clause. *See, e.g.*, Dkt. No. 29 at Ex. 4 (August 28, 2014 Superior Court Minute Order). The parties also agree that the state court granted the motion and dismissed the case without prejudice. *Id.* But the parties do

6

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

not agree that the dismissal was voluntary.

According to defendants' counsel, the state court "found that transfer was appropriate under the circumstances," but "offered Plaintiff's counsel the option instead of voluntarily dismissing the action so that any claims Plaintiff wished to pursue against Google or YouTube could be filed as a new case in the proper forum." Dkt. No. 34 at 3 (citing Dkt. No. 35, Decl. of Jacob T. Veltman). Defendants' claim is that "Plaintiff's counsel chose that route" at the hearing on the motion to transfer. *Id.* Plaintiff's counsel, however, disputes this account, stating that "[t]here was no such conversation between the state court judge and attorney Shapiro at the hearing of the motion to transfer" and that "at no time did [plaintiff's counsel] ever communicate any such election to the judge." Dkt No. 38 at 10-11 (citing Dkt. No. 39, Decl. of Michael R. Shapiro).

The facts are in dispute, and evidence outside the pleadings "cannot normally be considered in deciding a 12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). Therefore, the court declines to consider voluntary dismissal as a basis for rejecting plaintiff's equitable tolling allegations in this case.

### ii. Ten Months Between Dismissal and Filing

Next, defendants argue plaintiff did not act reasonably or in good faith because plaintiff waited over ten months from the date of the state court dismissal to file this action in federal court. Under the third prong of equitable tolling, "plaintiff's reasonable promptness in refiling is necessary for relief." *Kolani v. Gluska*, 64 Cal. App. 4th 402, 410 (1998), quoted in *Musaelian v. Sonoma Cty. Sheriff's Dep't*, No. C 07-00806 SI, 2007 WL 1864342, at *3 (N.D. Cal. June 28, 2007). While the case law provides no bright line rule for how long is too long, the court finds that plaintiff has not alleged facts showing reasonable and good faith conduct.

Plaintiff suggests that in order to reject equitable tolling in this case, the court must find that plaintiff "operated unreasonably or in bad faith," by, for example, engaging in procedural tactics such as forum or judge shopping or misleading defendants as to its intent to proceed. Dkt.

No. 38 at 7. Plaintiff relies on *Collier* to argue that "a plaintiff's inaction on the second claim—as opposed to affirmative conduct—can seldom be said to have misled the defendant in a way that would negate equitable tolling on that claim" because "[c]omplete inactivity on the second claim, in fact, is what 'equitable tolling' is all about." 142 Cal. App. 3d at 932. While affirmative misconduct may indeed be grounds for rejecting the doctrine of equitable tolling, no such allegations are at issue here. The question for the court is whether plaintiff has alleged facts that could show plaintiff's ten-month delay in refiling constitutes reasonable and good faith conduct.

*Collier* offers little support for plaintiff's position that the ten months does not "in and of itself" demonstrate unreasonable conduct. Dkt. No. 38 at 7. In fact, the *Collier* court found that plaintiff "acted most reasonably" when he filed his second administrative claim during the pendency of the first claim—not after the first claim was resolved, much less ten months after. 142 Cal. App. 3d at 931-32. The *Collier* court noted "[p]erhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be considered unreasonable," but found that it "need not decide" such a question. 142 Cal. App. 3d at 926, 931-32.

Plaintiff cites several cases applying equitable tolling, but all of the cases involve time gaps of substantially less than ten months; in some cases, there is no time gap between claims at all. *See Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271, 1274 (9th Cir. 2008) (applying equitable tolling where plaintiffs "promptly" filed in federal court on the same day the state court claims were dismissed); *Berry v. Pac. Sportfishing, Inc.*, 372 F.2d 213, 214 (9th Cir. 1967) (federal claim filed roughly three months after state court action was enjoined and only three days after statute of limitations would otherwise have run); *Addison*, 21 Cal. 3d at 317 (plaintiffs, "anticipating an adverse ruling" in federal case, filed a state court complaint the week before their federal claims were dismissed); *Tarkington v. Cal.Unemployment Ins. Appeals Bd.*, 172 Cal. App. 4th 1494, 1507 (2009) (second petition filed 13 days after denial of motion for reconsideration in first case); *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1102 (1997) (plaintiff filed state law

8

action "within three months" of outcome of administrative claim); *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 41 (1989) (second complaint filed "immediately following" voluntary dismissal in federal court). This court has not identified any authority finding a ten-month delay to be reasonable. *Cf. Musaelian*, 2007 WL 1864342, at *3("This Court is not aware of any authority which would allow equitable tolling here, where plaintiffs waited eight months to refile.").

Instead, the length of plaintiff's delay suggests unreasonable conduct. *See Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.*, No. C 12-04760 WHA, 2013 WL 633202, at *7-8 (N.D. Cal. Feb. 20, 2013) (finding no "good faith and reasonable conduct" where sixteen months elapsed between last decision in first case and plaintiff's second filing); *Bonifield v. Cty. of Nevada*, 94 Cal. App. 4th 298, 306 (2001) *disapproved of on other grounds by City of Los Angeles v. Cty. of Kern*, 59 Cal. 4th 618 (2014) (finding that plaintiffs had not alleged "reasonable conduct on their part" where they "waited 146 days after dismissal of their federal action, knowing all along that they intended to file the action again in state court"); *Kolani*, 64 Cal. App. 4th at 411 (claims not saved by equitable tolling where plaintiffs "made no showing justifying the 78 day delay from dismissal of the federal suit to refiling in state court").

Plaintiff has been on notice of the factual bases for its claims at least since April 2014, as shown by its allegations in the First Amended Complaint. Furthermore, plaintiff must have read the one-year limitation of action provision no later than when it responded to YouTube's motion to transfer the state court action. The provision was in all capital letters and in the section of YouTube's Terms of Service immediately following the section containing the forum selection clause. Yet it was not until several months later that plaintiff filed the current action. Plaintiff has not alleged facts showing that it acted reasonably and in good faith. *See Ervin*, 848 F.2d at 1020 (declining to apply equitable tolling because plaintiff's conduct was "neither reasonable nor in good faith" where record revealed that she had been in possession of defendant's investigation file "for perhaps as much as a year and a half prior to her filing").

9

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

Plaintiff does not provide any facts in its First Amended Complaint explaining the length of its delay despite being specifically advised by the court to do so. Dkt. No. 27 at 8. The motion to dismiss the First Amended Complaint is granted on the basis that the original federal complaint in this action was not filed within the one-year contractual limitations period in the YouTube's Terms of Service.[2]

### d. Leave to Amend

Although this court has already granted plaintiff the opportunity to allege equitable tolling, plaintiff requests leave to amend again in order "to explain what occurred during the 10 months here in issue." In its brief in opposition to defendant's motion, plaintiff offers for the first time an explanation for the delay in filing in federal court. Dkt. No. 38 at 11-13. A "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

If granted leave, plaintiff would allege that its legal team reasonably and in good faith worked collectively and individually during the ten months. Dkt. No. 38 at 11-13. Specifically, plaintiff would allege that because plaintiff was originally seeking a temporary restraining order and preliminary injunction, the state court complaint had to be filed promptly such that there was little time to research the facts and law in depth. *Id.* Plaintiff would allege that its counsel did not begin seriously researching the facts and legal theories until after the state court claim was dismissed. *Id.* Plaintiff would allege that its counsel, Michael Shapiro, working alone, first had to put together a quality team, and that finding the right combination of lawyers took a few months.

---

[2] Plaintiff also argues that, even if the court does not apply equitable tolling, the court should decline to enforce the contractual limitations period because it is unconscionable. Dkt. No. 38 at 12-17. This court addressed plaintiff's arguments regarding the unconscionability of YouTube's Terms of Service, including the contractual limitations period, in its December 2, 2015 order. *See* Dkt. No. 27 at 3-6. Plaintiff argues that it has amended the complaint to add facts demonstrating the unconscionability of the contract. However, plaintiff's new allegations merely rehash the arguments made in opposition to defendants' first motion to dismiss—that plaintiff lacked meaningful choice and that nobody reads YouTube's Terms of Service before agreeing to them. *See* Dkt. No. 19 at 5-9. The court declines to reconsider its ruling on unconscionability.

*Id.* Plaintiff would then allege that the legal team explored and researched potentially viable claims, before preparing and filing its selected claims in this action. *Id.* Plaintiff would then allege that these tasks reasonably required 10 months to accomplish. *Id.* Plaintiff would further allege the absence of bad faith on its part. *Id.*

The court is not persuaded that these allegations support equitable tolling. For example, while plaintiff's proposed amendments may explain why plaintiff rushed to file in state court, they do not explain plaintiff's failure to investigate and research its claims during the nearly five-month pendency of the state action. Furthermore, plaintiff's proposals do not explain why the legal team would need months to prepare a complaint based largely on the same facts as in the already-filed state court complaint. *See, e.g.*, *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 385 (9th Cir. 1997) (finding ten weeks "certainly sufficient time to commence an action"). In addition, the search for co-counsel, even for a solo practitioner, cannot justify several months delay. *Cf. Audio Mktg.*, 2013 WL 633202 at *7-8 (finding it insufficient for plaintiff to allege that "it took some time" for a "small, family-owned business with a single location in Paris" to "locate and educate an American lawyer to handle its claim"); *Miller v. IBM World Trade Corp.*, No. 06 CIV. 4452 (DLC), 2007 WL 700902, at *5 n.7 (S.D.N.Y. Mar. 8, 2007) (applying California law to reject equitable tolling because of unreasonable delay and stating that "time necessary to retain counsel cannot alone justify the year-long delay"). Lastly, plaintiff's allegations as to its lack of bad faith, even if accepted as true, would not relieve plaintiff of its burden to plead reasonable conduct on its part.

Despite the fact that the court questions the plaintiff's ability to successfully plead facts justifying equitable tolling, the court grants plaintiff an additional opportunity to do so.

### 2.  Communications Decency Act

Defendants assert that even if the complaint is viewed as timely, plaintiff's claims are precluded by the Community Decency Act.

#### a.  Section 230(c)(1)

11

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

Section 230(c)(1) of the Act states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) states: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." "Bringing these two subsections together, it appears that subsection (c)(1) only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009).

### i. Provider or User of an Interactive Computer Service

Plaintiff does not contest that defendants are interactive computer service providers, and the court agrees that the YouTube website "provides or enables computer access by multiple users to a computer server." 47 U.S.C § 230(f)(2) (defining "interactive computer service").

### ii. Information Provided by Another Information Content Provider

While plaintiff does not contest that that the "Cowgirl" video is "information provided by another information content provider," plaintiff appears to argue that the view count is not because it is "not material that third parties seek to post on line." *See* Dkt. No. 38 at 18 (quoting *Barnes*, 570 F.3d at 1103). The court is not persuaded by this argument. There is no suggestion that YouTube's users are unaware that their video views are counted—in fact, plaintiff alleges that the view counts are designed so that "each viewer can assess the popularity of the video by how many previous views it has garnered." YouTube does not become the "information content provider" merely because it makes decisions about how to present the view count; § 230(c)(1) shields defendants from "all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes*, 570 F.3d at 1105.

### iii. Treatment as Publisher or Speaker

Plaintiff also argues that plaintiff's claims do not seek to treat defendants as a publisher or

12

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

speaker. Defendants argue that they are immune from suit on both of plaintiff's claims because "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Id.* at 1103. The question this court must resolve, however, is whether, for each claim asserted by plaintiff, the specific duties that defendants allegedly violated derive from defendants' "status or conduct as a 'publisher or speaker.'" *Id.* at 1102.

In *Barnes*, plaintiff asserted two causes of action based on Yahoo's failure to remove unauthorized profiles posted her ex-boyfriend: (1) "negligent provision or non-provision of services which Yahoo undertook to provide" and (2) breach of "promise" to remove the profiles. *Id.* at 1098. The Ninth Circuit found that publisher immunity precluded plaintiff's negligent undertaking claim because the duty Yahoo had allegedly violated derived "from Yahoo's conduct as a publisher—the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles." *Id.* at at 1103. With respect to the promissory estoppel claim, however, the Ninth Circuit found that the duty Yahoo had allegedly violated arose from "a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant." *Id.* at 1107. The court explained that plaintiff's tort claim derived "liability from behavior that is identical to publishing or speaking: publishing defamatory material; publishing material inflicts emotional distress; or indeed attempting to de-publish hurtful material but doing it badly." *Id.* Plaintiff's contract claim, on the other hand, derived liability "not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id.*

This court concludes that plaintiff's tort claim for intentional interference with prospective economic advantage is precluded by § 230(c)(1). It seeks to hold defendants liable for "an action that is quintessentially that of a publisher," regardless of defendants' alleged motive. *Id.* at 1003; *see also Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (finding Title II discrimination claim precluded where plaintiff alleged that defendant's

13

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

removal of Facebook page "was motivated solely by unlawful discrimination").

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, however, is not precluded by § 230(c)(1) because it seeks to hold defendants liable for breach of defendants' good faith contractual obligation to plaintiff, rather than defendants' publisher status. Even though the claim is based on the same factual allegations as plaintiff's intentional interference claim, the source of defendants' alleged liability is different. The Terms of Service contain, as do all contracts, a covenant of good faith and fair dealing that defendants would not do anything to unfairly interfere with plaintiff's right to recover the benefits of the contract. Therefore, the court denies defendants' motion to dismiss plaintiff's implied covenant claim on the basis of § 230(c)(1).

### b. Section 230(c)(2)

Section 230(c)(2) provides immunity to providers and users of interactive computer services for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considered to be *obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable*, whether or not such material is constitutionally protected." 42 U.S.C. 230(c)(2)(A) (emphasis added). Although users and providers have discretion to decide what is "objectionable," it is not clear that videos removed because of suspected view count manipulation can be considered "objectionable" as that term is used in § 230(c)(2). The context of § 230(c)(2) appears to limit the term to that which the provider or user considers sexually offensive, violent, or harassing in content. *See Song Fi Inc. v. Google*, 108 F.Supp 3d 876, 883-884 (N.D. Cal. 2015).

This court does not, however, need to reach the question of whether deliberately inflated view counts are "objectionable." Plaintiff has alleged sufficient facts to support its claim that defendants did not act in good faith, which is a requirement under § 230(c)(2) immunity. As acknowledged by defendants, "[r]emovals must still be 'in good faith,' so the provider must actually believe that the material is objectionable for the reasons it gives." Dkt. 34 at 13 n.4.

14

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

Despite defendants' argument to the contrary, plaintiff alleges that defendants removed the video and view counts for reasons other than its belief that plaintiff manipulated the view count. Plaintiff makes the following assertions in support of its claim that defendants acted in bad faith:

- Plaintiff "did not engage in any activities to create an illegitimate view count" and "categorically denies" that it violated the Terms of Service. FAC ¶ 42.
- Defendants had no basis for removing the video and its view count. *Id.* ¶ 43.
- Defendants falsely accused plaintiff of violating the prohibition against using an automated systems to inflate the view count of the video. *Id.* ¶ 44.
- Defendants restored the Cowgirl video under a different URL. *Id.*
- Defendants knew that plaintiff had not violated the Terms of Service and nevertheless removed the Cowgirl video on two occasions—ever after being advised of plaintiff's "huge expenditure in advertising and promotion money." *Id.* ¶¶ 43, 45.
- Defendants were able to track viewers and ascertain that "the large majority of the viewer accessing the 'Cowgirl' video on YouTube came to the video by clicking links embedded in various of the hundreds of Clear Channel Internet radio websites" *Id.* ¶ 50
- Defendants unfairly competed with Clear Channel, defendants' advertising competitor, with whom plaintiff had a promotional contract. *Id.* ¶¶ 49, 50.
- Defendants sought to punish plaintiff because it failed to play "advertising ball" (agree to have advertising embedded in its video) with defendants. *Id.* ¶ 51.

The viability of plaintiff's complaint depends on its ability to prove that defendants acted in bad faith, and the allegations of plaintiff's First Amended Complaint are marginally sufficient to plead bad faith. Therefore, the court declines to dismiss on the basis of § 230(c)(2) immunity.

### B. Motion for Reconsideration

Defendants ask the court to reconsider its findings that "view counts" do not appear to fall within definition of "Content" in YouTube's Terms of Service and that "[e]ven if view counts are considered 'Content,' it is not clear that Section 7(B) expressly authorizes the removal of the associated video 'Content,' as opposed to just the offending view count."

#### 1. Definition of "Content"

Upon reconsideration, the court concludes that video counts are "Content." As defined by

15

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

Section 2 of YouTube's Terms of Service, "Content" includes "the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service." Defendants argue that view counts are encompassed by the plain meaning of the catchall term "other materials you may view on . . . the Service."[3] The court agrees. The California Court of Appeals has also found that "videos, *the* number of views of these videos, and the comments on the videos" are encompassed by the definition of "Content" in YouTube's Terms of Service. *Lewis v. YouTube, LLC,* 244 Cal. App. 4th 118, 125-26 (2015) (considering the definition of "Content" in interpreting limitation of liability clause). Where "there is relevant precedent from the state's intermediate appellate court, the federal court must follow [it] unless the federal court finds convincing evidence that the state's supreme court would likely not follow it." *Ryman v. Sears, Roebuck & Co.,* 505 F.3d 993, 994 (9th Cir. 2007).

Plaintiff submits that "Content" does not include view counts because Sections 6 and 7 of the Terms of Service refer to "Content" as material submitted by the user, *see* Dkt. No. 29, Ex. 1 §§ 6(A), 7(B), and view counts are not submitted by the user. However, the definition of Content is not limited to material submitted by a user; it includes materials "you may view on, access, or contribute to the Service." *Id.* § 2. YouTube users may "view" the video view counts themselves and may contribute to view counts by watching the videos. Moreover, a user who used an automated system to enhance a view count would be contributing "Content" to the Service, although in violation of the Terms of Service. *See id.* § 4(H).

### 2.  YouTube's Right to Remove and Relocate Content

Section 7(B) of the Terms of Service reserve to YouTube the right to decide, in its sole discretion, whether particular Content violates the Terms of Service and, if so, to remove such Content or terminate the user's account. Dkt. No. No. 29, Ex. 1 § 7(B). Since Section 4(H)

---

[3] Defendants also argue that view counts are encompassed by the ordinary meanings of other terms used in the definition of "Content," but because the court concludes that view counts are captured by the term "other materials," it need not address these arguments.

16

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC

prohibits the use of automated systems to enhance view counts, defendants assert that YouTube cannot be sued moving the video in order to reset its view count or removing the video altogether based on its determination that the video's view count had been manipulated. The court now agrees with defendants that the view count is content, and its enhancement by an automated system makes the view count subject to removal and the manipulator's account subject to termination.

Plaintiff, however, claims that YouTube removed the video and its view counts without any legitimate factual basis and set the Cowgirl view count at zero on re-posting. As noted above, plaintiff categorically denies that it automatically enhanced Cowgirl's view counts and asserts that YouTube's claim that did is made in bad faith. Dkt. No. 27 at 51-63. If plaintiff can prove these facts, Section 7(B) does not apply.

## III.   ORDER

For the reasons stated herein, plaintiff's claims are dismissed as barred by the statute of limitations. Plaintiff's claim for intentional interference with prospective economic advantage is dismissed with prejudice for the additional reason that it is precluded by publisher immunity under § 230 (c)(1) of Communications Decency Act. With respect to its claim for breach of the implied covenant of good faith and fair dealing, plaintiff is granted thirty (30) days leave to amend to plead facts showing a basis for tolling of the contractual limitations period in YouTube's Terms of Service. The court also reconsiders that portion of its December 2, 2005 Order finding that Section 7(B) of the Terms of Service Agreement did not clearly authorize YouTube to move plaintiff's video to reset its view count. The court now finds that the Terms of Service authorize YouTube to move a video to reset its view count if YouTube in good faith actually believed that the view count was enhanced by an automated system.

**IT IS SO ORDERED.**

Dated: November 2, 2016

_____
Ronald M. Whyte
United States District Judge

17

15-cv-03221-RMW
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION
FC