DAVID H. KRAMER, State Bar No. 168452
SAMUEL J. DIPPO, State Bar No. 310643
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  dkramer@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Email: bwillen@wsgr.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DARNAA, LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>GOOGLE INC. and YOUTUBE, LLC,<br><br>       Defendants. | Case No. 3:15-cv-03221-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Before: Hon. William Alsup<br>Ctrm:   8<br>Date:    February 16, 2017<br>Time:   8:00 am |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................iv

STATEMENT OF ISSUES..................................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

INTRODUCTION...............................................................................................................1

BACKGROUND.................................................................................................................3

      A.     YouTube, Darnaa, and the Relocation of Plaintiff's Video ...................................3

      B.     Plaintiff's State Court Action and Its Delay in Bringing this Case........................4

      C.     Plaintiff's FAC and Judge Whyte's Ruling on Equitable Tolling ........................5

ARGUMENT .....................................................................................................................6

I.     THERE IS NO BASIS FOR EQUITABLE TOLLING BASED ON THE FACTS
ALLEGED IN THE SECOND AMENDED COMPLAINT ................................................7

      A.     Plaintiff's 10-Month Delay in Bringing This Case Was Too Long to Establish
Reasonable Conduct That Can Support Equitable Tolling .....................................8

      B.     Plaintiff's Excuses for Its Extended Delay Do Not Support Tolling .....................9

II.    PLAINTIFF'S CLAIM FOR DAMAGES IS BARRED BY THE LIMITATION
OF LIABILITY PROVISION IN THE TERMS OF SERVICE AGREEMENT ............13

      A.     The Court of Appeal's Decision in *Lewis* Controls This Case ............................13

      B.     After *Lewis*, and in Light of This Court's Ruling on Section 230 of the CDA,
Section 1668 Does Not Save Plaintiff's Breach of Contract Claim.....................15

CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Addison v. California*, 21 Cal. 3d 313, 146 Cal. Rptr. 224 (1978) ...........................................7, 9, 12

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 262 Cal. Rptr. 716 (Cal. Ct.
    App. 1989)..................................................................................................................................9

*Applied Equip. Corp. v. Litton Saudi Arabia*, 869 P.2d 454 (Cal. 1994)......................................16

*Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.*, No. C 12-04760 WHA,
    2013 WL 633202 (N.D. Cal. Feb. 20, 2013)......................................................................9, 10

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2007) .................................................................17

*Bonifield v. Cty. of Nev.*, 114 Cal. Rptr. 2d 207 (Cal. Ct. App. 2001) ...................................2, 8, 12

*Cates Const., Inc. v. Talbot Partners*, 86 Cal. Rptr. 2d 855 (Cal. Ct. App. 1999).........................16

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ..........................................................7

*City of L.A. v. Cty. of Kern*, 328 P.3d 56 (Cal. 2014)......................................................................2

*Civic Center Drive Apartments Ltd. P'ship. v. Southwestern Bell Video Servs.*, 295
    F. Supp. 2d 1091 (N.D. Cal. 2003). Dkt. 27 ......................................................................17

*Desert Outdoor Advert. v. Super. Ct.*, 196 Cal. App. 4th 866, 127 Cal. Rptr. 3d 158
    (2011) ..................................................................................................................................13

*FiTeq Inc v. Venture Corp.*, 169 F. Supp. 3d 948, 956 (N.D. Cal. 2016) .....................................17

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 147 Cal. Rptr. 3d 634 (Cal. Ct.
    App. 2012)....................................................................................................................5, 13, 16

*Garber v. City of Clovis*, 698 F. Supp. 2d 1204 (E.D. Cal. 2010) ...................................................8

*Grayson v. 7-Eleven, Inc.*, No. 09cv1353-GPC(WMC), 2013 U.S. Dist. LEXIS
    40462 (S.D. Cal. March 21, 2013) ......................................................................................17

*Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813
    (Cal. Ct. App. 2009)............................................................................................................16

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) ................................................................12

*Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116 (9th Cir. 2008) ............................................9

*Kamar v. Krolczyk*, No. 1:07-CV-0340 AWI TAG, 2008 WL 2880414, (E.D. Cal.
    July 22, 2008) .......................................................................................................................7

*Kolani v. Gluska*, 75 Cal. Rptr. 2d 257 (Cal. Ct. App. 1998) ......................................................8, 9

*Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219 (Cal. Ct. App. 2015), *review denied*
    (Apr. 13, 2016) ...........................................................................................................*Passim*

*Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 195 Cal. Rptr. 576 (Cal. Ct. App. 1983)............................7

*Markborough Cal., Inc. v. Super. Ct.* 277 Cal. Rptr. 919 (1991)................................................13, 14

*Miller v. IBM World Trade Corp.,* No. 06 CIV. 4452 (DLC), 2007 WL 700902
   (S.D.N.Y. Mar. 8, 2007)................................................................................................10

*Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273 (Cal. Ct. App. 2003)........................................7

*Musaelian v. Sonoma Cty. Sheriff's Dep't*, No. C 07-00806 SI, 2007 WL 1864342
   (N.D. Cal. June 28, 2007)..............................................................................................9

*N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG, 2016 WL
   5358590 (N.D. Cal. Sept. 26, 2016).............................................................................17

*Nelmida v. Shelly Eurocars, Inc.,* 112 F.3d 380 (9th Cir. 1997)..........................................10

*Oltman v. Holland Am. Line-USA, Inc.*, 538 F.3d 1271 (9th Cir. 2008).............................9

*Provencio v. Vazquez*, No. 1:07-CV-0069 AWI TAG, 2008 WL 3982063 (E.D.
   Cal. Aug. 18, 2008) .......................................................................................................7

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988) ..............................................15

*Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061 (Cal. 1996)........................12, 13

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007) .......................................15

*Smith v. City and Cty. of San Francisco* 225 Cal. App. 3d 38, 275 Cal.Rptr. 17
   (1990) ...........................................................................................................................16

*Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) ...............................................................12

*Todd v. Cty. of Los Angeles*, 141 Cal. Rptr. 622 (Cal. Ct. App. 1977) ...........................12

*United Rentals, Inc. v. Super. Ct.*, No. C047773, 2005 Cal. App. Unpub. LEXIS
   5127 (Cal. Ct. App. May 19, 2005)...............................................................................12

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958 (9th Cir. 2001) ..................15

*WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 U.S. Dist.
   LEXIS 80978 (N.D. Cal. June 12, 2014) ......................................................................17

*Wood v. Cty of Santa Clara*, No. H030087, 2007 Cal. App. Unpub. LEXIS 3627
   (Cal. Ct. App. May 4, 2007)..........................................................................................12

## STATUTES

Cal. Civil Code § 1668 ...........................................................................................*Passim*

47 U.S.C. § 230(c)(1) ...........................................................................................5, 17, 18

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................. iv

Fed. R. Civ. P. 15 ............................................................................................................11

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3 PLEASE TAKE NOTICE that on February 16, 2017, at eight o'clock in the morning, before the

4 Honorable William Alsup of the United States District Court for the Northern District of

5 California, Courtroom 8 – 19th Floor, 450 Golden Gate Avenue, San Francisco, Defendants

6 Google Inc. and YouTube, LLC (collectively, "YouTube") will, and hereby do, move this Court

7 pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Second

8 Amended Complaint with prejudice.

9 The motion is based upon this Notice of Motion; the Memorandum of Points and

10 Authorities in support thereof; the Declaration of Samuel Dippo filed concurrently herewith; the

11 Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this

12 action; oral argument of counsel; and any other matters properly before the Court.

13

**STATEMENT OF ISSUES**

14 1. Is Plaintiff's breach of contract claim barred by the one-year limitations period in

15 YouTube's Terms of Service Agreement because the Second Amended Complaint fails to plead

16 facts to establish that Plaintiff's 10-month delay in filing this case following the dismissal of its

17 state court action was "good faith and reasonable" conduct, as necessary to support application

18 of equitable tolling?

19 2. Is Plaintiff's breach of contract claim barred based on the California Court of

20 Appeal's recent decision in *Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219 (Cal. Ct. App. 2015),

21 *review denied* (Apr. 13, 2016), because, as in that case, the only remedy that Plaintiff seeks is

22 expressly barred by the limitation of liability provision in the governing Terms of Service

23 Agreement?

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The most recent version of Plaintiff's complaint is its third attempt in this Court to hold Defendants Google Inc. and YouTube, LLC (collectively "YouTube") liable for routine actions YouTube took to protect its service from view-count manipulation. Plaintiff's sole remaining claim fails as a matter of law and should be dismissed without further leave to amend.

In March 2014, after YouTube determined that artificial means were being used to inflate the view count associated with a video that Plaintiff Darnaa, LLC ("Plaintiff") had uploaded, YouTube exercised its contractual rights to remove Plaintiff's video from its original location and to display it with a fresh view count elsewhere on the service. Based on these events, Plaintiff sued YouTube in state court in Los Angeles, asserting claims for breach of contract and tortious interference. Because the Terms of Service Agreement (the "Agreement") that governs the YouTube service has a forum-selection clause requiring that claims be brought in Santa Clara County, the state court dismissed Plaintiff's claims without prejudice.

Plaintiff then waited 10 months before filing this case on July 10, 2015—more than a full year after its video was moved. Plaintiff's Complaint (originally assigned to Judge Whyte) asserted the same claims as in the state court action, along with claims under the Lanham Act and for defamation. Judge Whyte dismissed that Complaint and a First Amended Complaint ("FAC") because, among other reasons, Plaintiff's delay in bringing this action had made its claims untimely under the one-year limitations period in the parties' Agreement. In an effort to get around this time bar, Plaintiff invoked the doctrine of equitable tolling, but the Court held that Plaintiff's explanations for its extended delay were insufficient to establish the "good faith and reasonable" conduct required to toll the contractual limitations period. While Judge Whyte was openly skeptical of "plaintiff's ability to successfully plead facts justifying equitable tolling," he gave Plaintiff one final "opportunity to do so." Dkt. 56, at 10-11. Plaintiff has now filed its Second Amended Complaint ("SAC"). Dkt. 62. It asserts a single claim, for breach of contract based on the implied covenant of good faith and fair dealing. That claim should be dismissed.

First, it is now even further evident that Plaintiff's untimely claim cannot be saved by equitable tolling. The SAC confirms what Judge Whyte suspected: Plaintiff cannot allege facts sufficient to establish that its more-than-10-month delay in filing this case following the dismissal of the state-court action was good faith and reasonable conduct. SAC ¶ 47. The only new reason Plaintiff now gives is garden-variety attorney neglect: "Notwithstanding that Plaintiff was represented by legal counsel from shortly after the accrual of the cause of action … none of the three counsel read the one-year contractual claim provision until after the one-year had already expired." *Id.* ¶ 48(a). This is facially implausible. As Judge Whyte explained, "plaintiff must have read the one-year limitation of action provision no later than when it responded to YouTube's motion to transfer the state-court action. The provision was in all capital letters and in the section of the YouTube Terms of Service immediately following the section containing the forum selection clause." Dkt. 56. at 9. Beyond that, Plaintiff's newly proffered excuse runs headlong into the established rule that "attorney neglect does not satisfy the standard of reasonableness and special circumstances required by California's equitable tolling doctrine." *Bonifield v. Cty. of Nev.*, 114 Cal. Rptr. 2d 207, 213 (Cal. Ct. App. 2001), *disapproved on other grounds by City of L.A. v. Cty. of Kern*, 328 P.3d 56 (Cal. 2014). Even if Plaintiff's team of lawyers were "neglectful in failing to read the entire TOS contract" (SAC ¶ 48(b)), as a matter of law, that is not a proper basis for tolling the limitations period. Plaintiff's other allegations regarding equitable tolling merely rehash the arguments that Judge Whyte has already considered and found wanting. Plaintiff's claim is time-barred, and it should be dismissed without further leave to amend.

Second, even if Plaintiff could somehow establish equitable tolling, its breach of contract claim would independently be barred by the limitation of liability provision in the Terms of Service Agreement. This provision makes clear that YouTube is not liable for any damages resulting from, among other things, omissions of any content. SAC Ex. 1 § 10. While Judge Whyte previously declined to dismiss Plaintiff's claim based on this provision, that was before the controlling decision in *Lewis v. YouTube, LLC.* In that case, the California Court of Appeal held that this same provision of the Agreement barred a nearly identical claim seeking damages against YouTube based on an alleged breach of the implied covenant of good faith. Judge

1    Whyte's prior ruling has been superseded by *Lewis*, which makes clear that the limitation of

2    liability clause applies to damages claims of the sort that Plaintiff makes here.

3                                        **BACKGROUND**

4           The full background to this case is set out in the Court's prior rulings. Dkt. 27 at 1-2; Dkt.

5    56 at 1-3. YouTube summarizes the facts most relevant to its present motion.

6    **A.      YouTube, Darnaa, and the Relocation of Plaintiff's Video**

7           YouTube operates a popular online video service that allows users to upload and view

8    personal videos without charge. SAC ¶ 13. The posting of videos on YouTube is governed by the

9    Agreement, which forms a binding contract between YouTube and its users (*id.* ¶ 21) and is

10   enforceable according to its terms. *See* Dkt. 27 at 3, 8-9; Dkt. 56 at 10 n.2. Section 4(H) of the

11   Agreement prohibits the use of automated systems to enhance view counts. Dkt. 56, at 16-17;

12   SAC, Ex. 1 (§4.H). This Court has expressly held, moreover, that the enhancement of a view

13   count "by an automated system makes the view count subject to removal and the manipulator's

14   account subject to termination" under Section 7(B) of the Agreement. Dkt. 56, at 17; SAC Ex. 1

15   (§4.H).

16          The final provision of the Agreement, set out in all capital letters, clearly and expressly

17   informs users that any cause of action related to the YouTube service must be commenced

18   "WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES." SAC Ex. 1 (§14);

19   Dkt. 27 at 6. The Agreement also specifically limits YouTube's liability for damages resulting

20   from, among other things, "any interruption or cessation of transmission to or from our services"

21   and "any errors or omissions in any content." SAC, Ex. 1 (§10); *see also* Dkt. 27 at 8.

22          Plaintiff, Darnaa, LLC, is an independent music label that promotes and produces the

23   music of the recording artist Darnaa (who is not herself a party to this case). SAC ¶ 9. Plaintiff

24   accepted YouTube's Terms of Service Agreement, and under the terms of that Agreement has

25   posted several videos on the YouTube service. *Id.* ¶¶ 21, 26-27, 52; Dkt. 21, at 2. On or around

26   March 4, 2014, Plaintiff posted a music video for a song entitled "Cowgirl." SAC ¶ 28. Shortly

27   thereafter, YouTube determined that the view count associated with the "Cowgirl" video had

28   been artificially inflated in violation of Section 4(H) of the Agreement. *Id.* ¶ 30. In response, on

1   or around March 21, 2014, YouTube removed the video from its original location. *Id.* The SAC

2   alleges that Plaintiff became aware on or around April 28, 2014 that YouTube had made the

3   video available for viewing at another location on the service where its view count was reset. *Id.*

4   ¶ 32. The SAC further alleges that on or around April 30, 2014, YouTube moved the video from

5   that new location. *Id.* ¶ 33.

6   **B.      Plaintiff's State Court Action and Its Delay in Bringing this Case**

7              Based on these events, Plaintiff filed suit for breach of contract and tortious interference

8   against Google Inc. (YouTube's parent) in Los Angeles Superior Court on April 7, 2014. *Darnaa*

9   *LLC v. Google Inc.*, No. BC541796. On May 27, 2014, YouTube invoked the forum-selection

10  provision in the Section 14 of the Agreement to have the case moved to Santa Clara Superior

11  Court. Dkt. 56 at 3; SAC ¶ 37. (Section 14 is the same provision of the Agreement in which the

12  one-year contractual limitations period appears in all capital letters. SAC Ex. 1 (§14); Dkt. 56, at

13  9.) On August 28, 2014, the state court invoked the forum-selection clause and dismissed

14  Plaintiff's action without prejudice. SAC ¶¶ 37-38 & Ex. 4; Dkt. 56, at 3, 6-7.

15             After its claims were dismissed in state court, Plaintiff did not refile its claims in Santa

16  Clara County Superior Court. Instead, it waited for more than 10 months and, without warning, it

17  refiled its case in this Court on July 10, 2015. Dkt. 1. During that delay (on or around March 21,

18  2015), the one-year limitations period elapsed. Dkt. 27, at 7; Dkt. 56, at 3; SAC ¶ 46. In its new

19  federal complaint, Plaintiff repeated the same breach of contract and tortious interference claims

20  it had asserted in state court, while adding some new causes of action, including claims under the

21  Lanham Act and for defamation based on the notice that YouTube posted when it moved the

22  video to a new location. Dkt. 1.

23             YouTube promptly moved to dismiss Plaintiff's Complaint. Dkt. 15. On December 2,

24  2015, the Court, per Judge Whyte, granted YouTube's motion. Dkt. 27 at 1, 19. Among other

25  things, the Court held that the contractual limitations provision was enforceable, not

26  unconscionable, and applied here because "plaintiff acknowledged that this action, which was

27  filed on July 10, 2015, commenced more than one year after the last wrongful act alleged in the

28  complaint." Dkt. 27, at 3-7. The Court specifically rejected Plaintiff's argument that its federal

1    action was timely "because plaintiff filed a separate action in state court within one year of

2    accrual of its causes of action." *Id*. at 7-8. Plaintiff's claims therefore were dismissed as time-

3    barred, though Judge Whyte gave Plaintiff leave to amend "to the extent that plaintiff is able to

4    plead facts showing that it is entitled to equitable tolling of the contractual limitations period

5    under California law." *Id.* at 8.

6         Judge Whyte also addressed YouTube's argument regarding the Agreement's limitation

7    of liability clause (§ 10). The Court rejected Plaintiff's argument that the limitation of liability

8    clause was categorically unenforceable, explaining that such clauses "have long been recognized

9    valid in California," particularly "where, as here, one party is offering a service for free." Dkt.

10   27, at 8-9 (quoting *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 147 Cal. Rptr. 3d 634,

11   641-42 (Cal. Ct. App. 2012)). Applying this clause, the Court dismissed Plaintiff's claim for

12   negligent interference with prospective economic advantage. *Id*. But Judge Whyte suggested that

13   California Civil Code section 1668 "may preclude application of section 10" to the other claims

14   asserted in that version of the complaint because they allege intentional wrongs. *Id*. at 9.

15   **C.    Plaintiff's FAC and Judge Whyte's Ruling on Equitable Tolling**

16        On December 14, 2015, Plaintiff filed its FAC, which dropped all of the new claims

17   Plaintiff had asserted in its original federal complaint and instead asserted only claims for breach

18   of contract (based on the implied covenant of good faith and fair dealing) and intentional

19   interference with prospective economic relations. Dkt. 29. Despite this Court's clear instructions,

20   however, the FAC pleaded no facts purporting to establish that equitable tolling of the

21   contractual limitations period was warranted. Instead, Plaintiff simply alleged that "[i]f" tolling

22   applies, the limitations period should be tolled for the period during which the state court action

23   was pending. FAC ¶ 37.

24        On November 2, 2016, the Court granted YouTube's motion to dismiss the FAC. Dkt. 56

25   at 17. Applying Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1),

26   the Court dismissed the tortious interference claim with prejudice. *Id*. at 11-14, 17. That left only

27   Plaintiff's breach of contract claim. The Court explained that "Section 7(B) of the [Agreement]

28   reserve[s] to YouTube the right to decide, in its sole discretion, whether particular Content

1  violates the Terms of Service and, if so, to remove such Content or terminate the user's account."
2  *Id.* at 16. And because the Court now agreed with YouTube that the term "Content" includes
3  video view counts (*id.*), Judge Whyte held that Plaintiff's breach of contract claim would fail as a
4  matter of law "if YouTube in good faith actually believed that the view count was enhanced by
5  an automated system." *Id.* at 17.

6      Finally, the Court again agreed that Plaintiff's claim was untimely under the contractual
7  limitations provision and could be saved only if Plaintiff could plead facts sufficient to establish
8  equitable tolling under California law. Dkt. 56, at 3-5, 10. That requires a three-part showing.
9  The Court held that Plaintiff failed to establish the final element of this test: "good faith and
10  reasonable conduct on the part of the plaintiff." *Id.* at 6. Judge Whyte focused in particular on the
11  fact that Plaintiff waited 10 months from the time that the state court dismissed its action to file
12  this case in federal court. *Id.* at 7-10. Citing extensive case law, the Court explained that "the
13  length of plaintiff's delay suggests unreasonable conduct" (*id.* at 9) and that "Plaintiff has not
14  alleged facts showing that it acted reasonably and in good faith" (*id.*); *see also id.* at 11
15  ("Plaintiff does not provide any facts in its First Amended Complaint explaining the length of its
16  delay despite being specifically advised by the court to do so.").

17      The Court also considered, and rejected as insufficient, several possible excuses for the
18  delay arguments that Plaintiff had raised, for the first time, in its opposition to YouTube's
19  motion to dismiss, including the need to assemble a legal team and to explore and research
20  potentially viable claims. *Id.* at 11 ("The court is not persuaded that these allegations support
21  equitable tolling."). While openly skeptical of the allegations that Plaintiff had proffered for its
22  delay, Judge Whyte gave Plaintiff one final chance to amend its complaint to try to establish a
23  basis for tolling. *Id.* at 11 ("Despite the fact that the court questions the plaintiff's ability to
24  successfully plead facts justifying equitable tolling, the court grants plaintiff an additional
25  opportunity to do so."). Plaintiff has now filed its SAC. Dkt. 62.

26  **ARGUMENT**

27      The issues presented by this motion are straightforward. Plaintiff cannot overcome the
28  Court's prior ruling regarding equitable tolling to save its claim from dismissal under the

1   contractual limitations provision. The allegations in the SAC are insufficient to establish that

2   Plaintiff's 10-month delay in filing this reflect "good faith and reasonable" conduct. While the

3   Court need go no further to end this case, the California Court of Appeal's recent decision in

4   *Lewis* separately makes clear that Plaintiff's breach of contract claim is barred by the limitation

5   of liability provision in the Terms of Service Agreement. Both of these issues can be decided as a

6   matter of law, and they require dismissal of the SAC without further leave to amend.

7   **I.      THERE IS NO BASIS FOR EQUITABLE TOLLING BASED ON THE FACTS**

8   **ALLEGED IN THE SECOND AMENDED COMPLAINT**

9           There is now no question that the one-year limitations period in the governing Agreement

10  renders Plaintiff's claim untimely. Dkt. 27, at 3-8; Dkt. 56, at 3. Plaintiff filed suit in this Court

11  on July 10, 2015, nearly 16 months after Plaintiff concedes that its cause of action accrued. SAC

12  ¶¶ 46-47. That cause of action is barred by the Agreement unless equitable tolling applies. Dkt.

13  27, at 7-8. "When a plaintiff relies on a theory of . . . equitable tolling . . . to save a cause of

14  action that otherwise appears on its face to be time-barred, he or she must specifically plead facts

15  which, if proved, would support the theory." *Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273, 286

16  (Cal. Ct. App. 2003) (citation omitted). For many of the reasons that Judge Whyte has already

17  given, Plaintiff has not done so here.

18          California law is clear that "[e]quitable tolling should be sparingly applied in special

19  situations." *Provencio v. Vazquez*, No. 1:07-CV-0069 AWI TAG, 2008 WL 3982063, at *9 (E.D.

20  Cal. Aug. 18, 2008) (citing *Addison v. California*, 21 Cal. 3d 313, 316, 146 Cal. Rptr. 224

21  (1978)); *see, e.g.*, *Kamar v. Krolczyk*, No. 1:07-CV-0340 AWI TAG, 2008 WL 2880414, at *11

22  (E.D. Cal. July 22, 2008) ("no special circumstances in this case justifying the application of the

23  equitable tolling doctrine"). There is a "'definitive three-pronged test for invocation of the

24  doctrine' of equitable tolling." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)

25  (quoting *Loehr v. Ventura Cty. Cmty Coll. Dist.*, 195 Cal. Rptr. 576, 584 (Cal. Ct. App. 1983)).

26  The first two prongs are (1) timely notice and (2) lack of prejudice to the defendant. *Id.* At issue

27  in this case is the third prong: plaintiff's "good-faith and reasonable conduct." Dkt. 56, at 6; SAC

28  ¶ 47. This Court has already held that there is no automatic tolling for the period that the state

1   court action was pending. Dkt. 27, at 7-8. Instead, Plaintiff must allege facts (which it would

2   ultimately have to prove) establishing that its 10-month delay in filing this case after the

3   dismissal of its state-court action was good faith and reasonable. Dkt. 56, at 8. Judge Whyte has

4   analyzed this issue in detail, and found Plaintiff's position lacking. *Id.* at 7-11. And what little

5   more Plaintiff now offers fails as a matter of law to justify equitable tolling.

6       **A.    Plaintiff's 10-Month Delay in Bringing This Case Was Too Long to Establish**

7           **Reasonable Conduct That Can Support Equitable Tolling**

8           The first and most fundamental problem with Plaintiff's effort to invoke equitable tolling

9   is the sheer length of its delay following the dismissal of the state-court action. "[P]laintiff's

10  reasonable promptness in refiling is necessary for relief under [equitable tolling]." *Kolani v.*

11  *Gluska*, 75 Cal. Rptr. 2d 257, 262 (Cal. Ct. App. 1998); *see also Garber v. City of Clovis*, 698 F.

12  Supp. 2d 1204, 1214 (E.D. Cal. 2010) (to satisfy the good faith and reasonable conduct

13  requirement, "the plaintiff must file his second claim a short time after tolling has ended")

14  (citations omitted). Here, however, Plaintiff concedes that it waited over 10 months to file this

15  case, from September 4, 2014 (when the state court dismissed the case) to July 10, 2015. SAC ¶

16  47. And Judge Whyte has explained that "the length of plaintiff's delay suggests unreasonable

17  conduct." Dkt. 56, at 9.

18          The case law confirms that this delay is simply too long for equitable tolling to apply. In

19  his ruling, Judge Whyte discussed *Bonifield v. County of Nevada*, 114 Cal. Rptr. 2d 207, 213

20  (Cal. Ct. App. 2001), and *Kolani v. Gluska*, *supra*, both of which expressly rejected tolling based

21  on delays shorter than the one at issue here. Dkt. 56, at 9. In *Bonifield*, plaintiffs waited 146 days

22  after the dismissal of their first suit before filing their action in state court. 114 Cal. Rptr. at 213.

23  The Court of Appeal held that this delay was inconsistent with the requirement of "reasonable

24  conduct" and affirmed dismissal of the case as untimely. *Id.* Similarly, in *Kolani*, the Court of

25  Appeal held that the plaintiff's claims could not be saved by equitable tolling because a 78-day

26

27

28

delay from dismissal to refiling in state court was too long. 75 Cal. Rptr. 2d at 262.[1] Surveying this case law, Judge Illston has observed that there is no authority "which would allow equitable tolling . . . where plaintiffs waited eight months to refile." *Musaelian v. Sonoma Cty. Sheriff's Dep't*, No. C 07-00806 SI, 2007 WL 1864342, at *3 (N.D. Cal. June 28, 2007). Indeed, the Ninth Circuit, applying California law, has expressly held that a 47-day delay to refile an action in federal court following its dismissal from state court could not support equitable tolling. *See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1127 (9th Cir. 2008).[2]

As a matter of law, therefore, Plaintiff's decision to wait 10 months to refile its case is not reasonable and cannot support equitable tolling. That is especially so given that YouTube's conduct had absolutely nothing to do with Plaintiff's delay, and Plaintiff clearly was on notice regarding the limitations provision. As Judge Whyte observed, "plaintiff must have read the one-year limitation of action provision no later than when it responded to YouTube's motion to transfer the state court action. The provision was in all capital letters and in the section of YouTube's Terms of Service immediately following the section containing the forum selection clause." Dkt. 56, at 9. The Court need go no further. The clear notice, combined with Plaintiff's lengthy delay, is enough, by itself, to reject any application of equitable tolling in this case.

### B. Plaintiff's Excuses for Its Extended Delay Do Not Support Tolling

While the length of the delay alone is enough to reject Plaintiff's bid for equitable tolling, Judge Whyte's prior ruling also rejected various explanations for the delay that Plaintiff had trotted out (without actually pleading) in its opposition to YouTube's motion to dismiss. The Court's ruling on these issues speaks for itself:

---

[1] Judge Whyte also cited this Court's own decision in *Audio Marketing. Services., S.A.S. v. Monster Cable Products, Inc.*, No. C 12-04760 WHA, 2013 WL 633202, at *7-8 (N.D. Cal. Feb. 20, 2013), which found no good faith and reasonable conduct based on a 16-month delay.

[2] As Judge Whyte recognized, the cases that have permitted equitable tolling have involved significantly shorter delays in refiling than the one here. Dkt. 56, at 8-9 (citing, e.g., *Oltman v. Holland Am. Line-USA, Inc.*, 538 F.3d 1271, 1274, 1280 (9th Cir. 2008) (plaintiffs protected themselves by filing in federal court on the *same day* the state court claims were dismissed); *Addison*, 21 Cal. 3d at 317 (plaintiffs filed a state court complaint the week *before* their federal claims were dismissed); *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 262 Cal. Rptr. 716, 741 (Cal. Ct. App. 1989) (second complaint filed "immediately following" voluntary dismissal in federal court)).

1    If granted leave, plaintiff would allege that its legal team reasonably and in
2    good faith worked collectively and individually during the ten months. Dkt. No. 38
     at 11-13. Specifically, plaintiff would allege that because plaintiff was originally
3    seeking a temporary restraining order and preliminary injunction, the state court
     complaint had to be filed promptly such that there was little time to research the
4    facts and law in depth. *Id.* Plaintiff would allege that its counsel did not begin
     seriously researching the facts and legal theories until after the state court claim
5    was dismissed. *Id.* Plaintiff would allege that its counsel, Michael Shapiro, working
     alone, first had to put together a quality team, and that finding the right
6    combination of lawyers took a few months. *Id.* Plaintiff would then allege that the
     legal team explored and researched potentially viable claims, before preparing and
7    filing its selected claims in this action. *Id.* Plaintiff would then allege that these
     tasks reasonably required 10 months to accomplish. *Id.* Plaintiff would further
8    allege the absence of bad faith on its part. *Id.*

9    The court is not persuaded that these allegations support equitable tolling.
     For example, while plaintiff's proposed amendments may explain why plaintiff
10   rushed to file in state court, they do not explain plaintiff's failure to investigate and
     research its claims during the nearly five-month pendency of the state action.
11   Furthermore, plaintiff's proposals do not explain why the legal team would need
     months to prepare a complaint based largely on the same facts as in the already-
12   filed state court complaint. *See, e.g., Nelmida v. Shelly Eurocars, Inc.,* 112 F.3d
     380, 385 (9th Cir. 1997) (finding ten weeks "certainly sufficient time to commence
13   an action"). In addition, the search for co-counsel, even for a solo practitioner,
     cannot justify several months delay. *Cf. Audio Mktg.* [*Servs., S.A.S. v. Monster*
14   *Cable Prods., Inc.,* No. C 12-04760 WHA], 2013 WL 633202 at *7-8 [(N.D. Cal.
     Feb. 20, 2013)] (finding it insufficient for plaintiff to allege that "it took some
15   time" for a "small, family-owned business with a single location in Paris" to
     "locate and educate an American lawyer to handle its claim"); *Miller v. IBM World*
16   *Trade Corp.,* No. 06 CIV. 4452 (DLC), 2007 WL 700902, at *5 n.7 (S.D.N.Y.
     Mar. 8, 2007) (applying California law to reject equitable tolling because of
17   unreasonable delay and stating that "time necessary to retain counsel cannot alone
     justify the year-long delay"). Lastly, plaintiff's allegations as to its lack of bad
18   faith, even if accepted as true, would not relieve plaintiff of its burden to plead
     reasonable conduct on its part.

19   Dkt. 56 at 10-11.

20   While the SAC rehashes some of this same story (¶¶ 43-45, 49), Plaintiff's professed

21   need to assemble a legal team and to research additional causes of action no more supports

22   equitable tolling now than it did before. Judge Whyte's analysis was spot on. There was nothing

23   to stop Plaintiff from simply filing a version of its earlier complaint in this Court (or in Santa

24   Clara Superior Court) in the seven months it had following the dismissal of its state court action

25   before the limitations period expired. Then, if needed, Plaintiff could have amended that

26   complaint to add new claims or elaborate on existing ones. *See* Fed. R. Civ. P. 15. Plaintiff's

27   failure to do so is simply not reasonable. That is reinforced by the fact that the new claims

28   Plaintiff asserted in its first federal complaint (defamation and Lanham Act) are hardly exotic or

1    complicated legal theories. Those claims were straightforward based on the same facts at issue in

2    the state court action. Dkt. 1 ¶¶ 55-56. They were also insubstantial, leading to their prompt

3    dismissal by this Court (Dkt. 27, at 13-18), after which Plaintiff voluntarily abandoned those

4    claims by failing to replead them in its FAC (Dkt. 29). In short, it is clear that the SAC's

5    allegations about Plaintiff's legal strategy following the demise of its state court case cannot

6    justify allowing Plaintiff to evade the contractual limitations period. *See* Dkt. 56, at 10.

7        Plaintiff candidly admits as much in its new complaint:

8        It is the law of this case pursuant to a previous order that the allegations of the First
         Amended Complaint (which are repeated in this Second Amended Complaint)
9        establish the first two elements but do not establish the third element because the
         filing of original complaint in the San Jose Courthouse on July 10, 2015 (10
10       months, six days after the Los Angeles action was dismissed on September 4, 2014)
         ***constitutes an unreasonable length of time and therefore makes Plaintiff's***
11       ***conduct unreasonable*** within the third element of the California doctrine of
         equitable tolling.

12

13   SAC ¶ 47 (emphasis added). Recognizing the shortcomings of the excuses it has offered to date,

14   Plaintiff now advances a brand new theory for its extended delay. Plaintiff now seeks to blame

15   its own counsel. Plaintiff makes the remarkable allegation that even though Plaintiff was

16   represented "by a litigation team of three experienced attorneys" (*id*. ¶ 48(d)) – the same legal

17   team Plaintiff supposedly spent so much time assembling (*id*. ¶ 42) that it could not file this case

18   on time – "none of the three counsel read the one-year contractual limitations provision until

19   after the one-year had already expired" (*id*. ¶ 48(a)). Plaintiff "concedes that its counsel were

20   neglectful" in this respect (*id*. ¶ 48(b)), but argues that "Plaintiff's neglect through its attorneys

21   in failing to become aware of the contractual one-year limitations period until after the one year

22   had expired should be deemed excusable neglect" and lead to equitable tolling (*id*. ¶ 50).

23       As an initial matter, this story is implausible on its face. As Judge Whyte has noted, the

24   limitations provision appears prominently, in all capital letters, ***in the very same provision of the***

25   ***Agreement that was specifically at issue in the original state court litigation.*** Dkt. 56, at 9; SAC

26   Ex. 1 (§14). The limitations provision is right below the forum-selection clause that the parties

27   fiercely litigated in the state court. Indeed, both Plaintiff and Google attached the entire

28   Agreement, including the full text of Section 14, to the papers that they filed in that case. Dippo

Decl. ¶¶ 3-6, Exhs. 1-2. The idea that Plaintiff and its counsel did not know about the contractual limitations period simply cannot be credited.

But even if Plaintiff's newly proffered excuse were believable, it would make no difference. Plaintiff's argument runs headlong into black-letter law. As the California Court of Appeal has made clear: "***attorney neglect does not satisfy the standard of reasonableness and special circumstances required by California's equitable tolling doctrine***." *Bonifield*, 114 Cal. Rptr. 2d at 213 (emphasis added) (citing *Todd v. Cty. of Los Angeles*, 141 Cal. Rptr. 622, 625 (Cal. Ct. App. 1977) (counsel's negligence in failing to file within statutory time insufficient to avoid statutory bar). In *Bonifield*, the Court rejected the plaintiffs' argument that their "attorney's failure to appreciate that the filing of the stipulation for dismissal constituted a dismissal of the federal action as a matter of law" was the kind of "special circumstance" required for equitable tolling. *Id.* ("Because plaintiffs did not satisfy the third element of the equitable tolling doctrine, i.e., reasonable conduct on their part, the superior court ruled correctly by sustaining Nevada County's demurrer without leave to amend and entering a judgment of dismissal.").[3] And this is hardly some unique quirk of California law. As both the U.S. Supreme Court and the Ninth Circuit have made clear, routine attorney neglect is not a proper basis for equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect"); *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003) ("ordinary attorney negligence will not justify equitable tolling").

This established rule applies with special force in this case, in which Plaintiff is asserting a breach of contract claim based on the very agreement that contains the limitations provision. Given the nature of that claim, Plaintiff (through its counsel) cannot be excused from carefully reviewing the full text of the governing Agreement. *Accord Rosenthal v. Great W. Fin. Sec. Corp.*,

---

[3] So well settled is this rule that subsequent state appellate courts have repeatedly applied it without needing to publish their rulings. *See, e.g., Wood v. Cty of Santa Clara*, No. H030087, 2007 Cal. App. Unpub. LEXIS 3627, at *27 (Cal. Ct. App. May 4, 2007) ("Neglect of counsel cannot serve as a basis for tolling the statute of limitations") (citing *Bonifield*, 114 Cal. Rptr. 2d at 213); *United Rentals, Inc. v. Super. Ct.*, No. C047773, 2005 Cal. App. Unpub. LEXIS 5127, at *17 (Cal. Ct. App. May 19, 2005) (finding no cases holding that "delay due to attorney neglect qualifies as reasonable and good faith conduct") (citing *Addison*, 21 Cal. 3d at 319).

1   926 P.2d 1061, 1079 (Cal. 1996) ("it is generally unreasonable . . . to neglect to read a written

2   agreement before signing it."); *Desert Outdoor Advert. v. Superior Court*, 196 Cal. App. 4th 866,

3   872, 127 Cal. Rptr. 3d 158, 163 (2011) ("A cardinal rule of contract law is that a party's failure to

4   read a contract, or to carefully read a contract, before signing it is no defense to the contract's

5   enforcement.") (citations omitted). Thus, even assuming that attorney negligence could ever be a

6   basis for equitable tolling, it would not be here. There is nothing equitable or reasonable about

7   allowing a party to pursue an untimely breach of contract action simply because its lawyers

8   neglected to read the specific contract that the party has chosen to put at issue.

9        In short, Plaintiff's allegations do not amount to a showing of the "good faith and

10  reasonable conduct" required by California law. Plaintiff waited too long to refile its claims in

11  this Court, and its implausible claim that its own "experienced" lawyers did not read the contract

12  fails as a matter of law. Because Plaintiff's claims are time barred, and cannot be saved by

13  equitable tolling, this Court should dismiss the SAC with prejudice.

14  **II.    PLAINTIFF'S CLAIM FOR DAMAGES IS BARRED BY THE LIMITATION OF**

15  **LIABILITY PROVISION IN THE TERMS OF SERVICE AGREEMENT**

16       Although the untimeliness of Plaintiff's claim is enough to grant YouTube's motion, there is

17  another independent basis for dismissing this case. Plaintiff's breach of contract claim fails

18  because money damages, the sole remedy Plaintiff seeks, are expressly barred by the parties'

19  Agreement:

20       In no event shall YouTube . . . be liable to you for any direct, indirect, incidental,
         special, punitive, or consequential damages whatsoever resulting from . . .
21       (iv) any interruption or cessation of transmission to or from our services . . . [or]
         (v) any errors or omissions in any content . . . whether based on warranty,
22       contract, tort, or any other legal theory[.]

23  SAC., Ex.A at ¶ 10. This provision applies here.

24       **A.    The Court of Appeal's Decision in *Lewis* Controls This Case**

25       Limitation of liability clauses like this one "have long been recognized as valid in

26  California." *Food Safety Net Servs.*, 147 Cal. Rptr. 3d at 641-42 (quoting *Markborogh Cal., Inc. v.*

27  *Super. Ct.*, 277 Cal. Rptr. 919, 925 (1991). They are particularly appropriate where, as here, one

28  party is offering a service for free to the public. *See Markborough*, 277 Cal. Rptr. at 925

("limitation of liability provisions are particularly important where the beneficiary of the clause is involved in a 'high-risk, low-compensation service'"). The limitation of liability provision in the Terms of Service Agreement indisputably covers this case. Plaintiff seeks to hold YouTube liable for removing the "Cowgirl" video from its original location and for eliminating the tainted view count. That claim arises out of an "interruption or cessation of transmission … from [YouTube's] services" and an "omission[]" in "content," i.e., the view count. SAC., Ex. A at ¶ 9.  *Accord* Dkt. 56, at 16 (holding on reconsideration that a view count is "content" as defined in the Agreement).

In ruling on Google's original motion to dismiss, Judge Whyte dismissed Plaintiff's negligent interference claim based on Section 10 of the Agreement. Dkt. 27, at 9. But he declined to apply that provision to the other claims asserted in that first version of Plaintiff's Complaint (including breach of contract) because Plaintiff had characterized those claims as involving intentional wrongs. *Id*. at 9. Judge Whyte noted that this characterization was suspect: "Although plaintiff's opposition describes all claims other than the negligence claim as 'intentional torts,' the court notes that the first cause of action in the complaint is for 'breach of contract per breach of covenant of good faith and fair dealing.'" *Id*. at 9 n.1. But, nevertheless, Judge Whyte allowed the claim to proceed.

This aspect of Judge Whyte's ruling has been superseded by subsequent case law. In *Lewis v. YouTube*, which was decided in a published opinion shortly after Judge Whyte's original ruling, the California Court of Appeal held, as a matter of law, that the same limitation of liability provision in Section 10 of the YouTube Terms of Service Agreement barred a virtually identical breach of contract claim based on the removal of a YouTube user's videos and related view counts. *Lewis*, 197 Cal. Rptr. 3d at 224-25. Just as in this case, the plaintiff in *Lewis* sued for breach of contract (including for breach of the implied covenant of good faith and fair dealing) after YouTube removed her videos, along with their associated view counts, based on a violation of Section 4(H)'s prohibitions on the use of automated systems. And just as in this case, the plaintiff maintained that she had not violated that provision and that YouTube had acted in bad faith in taking action against her videos. *Id*. at 220-22. But the Court of Appeal squarely held that this breach of contract claim was barred by Section 10 of the Agreement:

1
2
3

> By claiming that YouTube wrongfully deleted her videos, the number of views of the videos, and the comments on the videos, Lewis is claiming that YouTube failed to do as it should by omitting content on its Web site. Thus, since the limitation of liability clause applied, the trial court properly sustained the demurrer without leave to amend as to the second cause of action.

4   *Id*. at 225. This was a legal ruling, not one that turned on the facts of the case. Indeed, the Court

5   explained that "since we have concluded that the limitation of liability clause of the Terms of

6   Service applies to [plaintiff's] claim for damages and none of the provisions of the Terms of

7   Service can serve as the basis for specific performance, Lewis cannot amend her complaint to state

8   a cause of action for breach of contract." *Id*. at 226-27.

9        In short, whatever the law might have been at the time Judge Whyte originally addressed

10  this issue, it is now clear that Section 10 requires dismissal of Plaintiff's sole remaining claim.

11  The "law of the case" doctrine does not apply where, as here, there has been "a dispositive

12  intervening decision of an intermediate appellate state court." *Richardson v. United States*, 841

13  F.2d 993, 996 (9th Cir. 1988); *see also Ryman v. Sears, Roebuck & Co*., 505 F.3d 993, 994 (9th

14  Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide

15  differently, a federal court is obligated to follow the decisions of the state's intermediate

16  appellate courts.") (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp*., 249 F.3d 958, 960 (9th

17  Cir. 2001)). Plaintiff's breach of contract claim is indistinguishable from the one dismissed in

18  *Lewis*: it is based on the same provisions of the Agreement, the same basic fact pattern, and the

19  same allegations of a lack of good faith. SAC ¶¶ 30, 57. If Ms. Lewis's claim could not survive

20  Section 10, neither can Plaintiff's.

21       **B.      After *Lewis*, and in Light of This Court's Ruling on Section 230 of the CDA,**

22       **Section 1668 Does Not Save Plaintiff's Breach of Contract Claim**

23       Plaintiff may again try to rely on California Civil Code section 1668, which states that

24  contracts that have as their object to "exempt any one from responsibility for his own fraud, or

25  willful injury to the person or property of another, or violation of law, whether willful or

26  negligent, are against the policy of the law." But after *Lewis*, the Court should take another look at

27  this issue. While the *Lewis* court did not discuss Section 1668, that was because the plaintiff there,

28  despite raising numerous objections to the enforceability of YouTube's limitation of liability

provision, did not even try to argue that Section 1668, which applies only to liability for "fraud," "willful injury," or "violation of law," saved an ordinary breach of contract claim. That approach was correct, and it does not create a basis for refusing to apply *Lewis'*s unequivocal holding that Section 10 of the Terms of Service Agreement bars claims for breach of that same contract. It is inconceivable that *Lewis* would have come out differently had Section 1668 been specifically addressed.

That is because an alleged breach of contract like the one at issue here is neither a fraud nor a willful injury. While courts have applied Section 1668 to "international wrongs," a breach of contract claim does not sound in tort and does not involve willful misconduct. As the California Supreme Court has explained, "the law generally does not distinguish between good and bad motives for breaching a contract" and "imposition of tort liability [for breach of contract] also thwarts legal rules and policies limiting contract damages to those sums reasonably foreseeable to the contracting parties." *Applied Equip. Corp. v. Litton Saudi Arabia*, 869 P.2d 454, 461 (Cal. 1994). That is equally true of breach of contract claims based on the implied covenant of good faith and fair dealing. "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract." *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 850 (Cal. Ct. App. 2009) (citing *Smith v. City and Cty. of San Francisco* 225 Cal. App. 3d 38, 49, 275 Cal.Rptr. 17, 23-24 (1990)). It is well settled that, at least outside the insurance context, "breaches of the covenant of good faith implied within contracts are not tortious." *Food Safety Net Servs.*, 147 Cal. Rptr. 3d at 643; *see also Cates Const., Inc. v. Talbot Partners*, 980 P.2d 407, 416 (Cal. 1999).[4]

Recognizing this principle, recent decisions from this District have expressly declined to apply Section 1668 to claims sounding in contract. *See, e.g.*, *N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG, 2016 WL 5358590, at *16 (N.D. Cal. Sept. 26, 2016) ("Plaintiff's claims for breach of contract and conversion do not fall within the scope of California Civil Code

---

[4] Indeed, as noted above, Judge Whyte seemed to recognize that Plaintiff's characterization of his claim for breach of the implied covenant of good faith as an "intentional tort" claim was suspect. Dkt 27, at 9 n.1.

§ 1668 because they are not intentional wrongs"); *see also FiTeq Inc v. Venture Corp.*, 169 F. Supp. 3d 948, 956 (N.D. Cal. 2016) (declining to apply Section 1668 to breach of contract claims); *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 U.S. Dist. LEXIS 80978, at *31-32 (N.D. Cal. June 12, 2014) (limitation of liability is unenforceable as to "fraud and other intentional wrongs" (quoting *Farnham v. Super. Ct.*, 60 Cal. App. 4th 69, 71, 70 Cal. Rptr. 2d 85 (Cal. Ct. App. 1997) but "still applies to Plaintiff's breach of contract claims, as Plaintiff concedes"). Courts from elsewhere in the state have done likewise. *See, e.g.*, *Grayson v. 7-Eleven, Inc.*, No. 09cv1353-GPC(WMC), 2013 U.S. Dist. LEXIS 40462 at *17 (S.D. Cal. March 21, 2013) ("breach of implied contract does not involve an intentional tort. The Court concludes that the breach of implied contract claim does not fall under California Civil Code section 1668."). Especially in light of *Lewis*, this Court should reach the same conclusion here.[5]

There is an additional reason why it would now be anomalous to apply Section 1668 to Plaintiff's breach of contract claim. At the time of Judge Whyte's original ruling, Plaintiff had an actual intentional tort claim (for intentional interference with prospective economic advantage) to accompany its breach of contract claim. Dkt. 27, at 9. But that interference claim was subsequently dismissed. Dkt. 56, at 13-14. In so doing, Judge Whyte made clear that insofar as Plaintiff's claims sound in tort, rather than contract, they are categorically barred by Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). *See id.* (applying *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2007)). In contrast, the Court allowed Plaintiff's breach of contract claim to survive Section 230 because "the source of defendants' alleged liability is different," i.e., "defendants' good faith contractual obligation to plaintiff." *Id.* at 14. Having saved its contract claim on this basis, Plaintiff cannot now recharacterize that claim as sounding in intentional tort. If Plaintiffs are really bringing a contract-based claim, one that can

---

[5] Judge Whyte cited *Civic Center Drive Apartments Limited Partnership v. Southwestern Bell Video Services*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003). Dkt. 27, at 10. But in that case, the plaintiff alleged that the defendant *fraudulently* concealed installment of faulty cable. *Id.* at 1106. The court concluded that this specifically alleged fraud brought the case within Section 1668's literal terms, regardless of the precise form the claim took. Even accepting that result, this case is very different. Plaintiff here does not have a claim for fraud, but instead a routine breach of contract claim based on the implied covenant of good faith. That is not a willful injury or intentional wrong.

get around the CDA, it is barred by Section 10 of the Agreement, as *Lewis* confirms. On the other hand, if Plaintiff wants to turn that claim into one based on an intentional wrong, so that it is covered by Section 1668, the claim would be precluded by Section 230(c)(1), for the reasons this Court has already stated. Either way, the claim fails as a matter of law.

**CONCLUSION**

For the reasons given above, the one remaining claim in Plaintiff's SAC should be dismissed with prejudice.


DATED:  January 11, 2017                    Respectfully submitted,

                                            WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                            By: */s/ Brian M. Willen*_____
                                                  Brian M. Willen

                                            *Attorneys for Defendants*